0508

DILLON COUNTY SCHOOL DISTRICT NUMBER TWO, Appellant, v. LEWIS SHEET METAL WORKS, INC., Dargan Construction Co., Inc., Bonitz Insulation Company of South Carolina, Gene K. King d/b/a Johnson and King Engineers, William N. Geiger, Donald H. McElveen, Robert H. Kennedy d/b/a/ Geiger, McElveen & Kennedy, and/or G.M.K., Inc., the Celotex Corporation, and W. R. Grace & Company, Inc., Respondents.

(332 S. E. (2d) 555)

Court of Appeals

*Kermit S. King,* Columbia, *for appellant.*

*John Gregg McMaster, John U. Bell, III, Joel H. Smith, Peter L. Murphy* and *Celeste T. Jones,* Columbia, *Harry C. Wilson, Jr.,* Sumter, *Lawrence B. Orr, Mark W. Buyck, Jr., Wm. Reynolds Williams* and *Finley B. Clarke,* Florence, *for respondents.*

Heard March 26, 1985.

Decided June 24, 1985.

GOOLSBY, Judge:

This action by the appellant Dillon County School District Number Two seeks recovery for losses resulting from the defective design and construction of a roof to a school building. The circuit court granted summary judgment in favor of the respondents Lewis Sheet Metal Works, Inc. (Lewis),

Dargan Construction Company, Inc. (Dargan), Bonitz Insulation Company of South Carolina (Bonitz), Gene King doing business as Johnson and King Engineers (King), William N. Geiger, Donald H. McElveen, Robert H. Kennedy doing business either as Geiger, McElveen & Kennedy, a partnership, or as G.M.K., Inc. (G.M.K.), The Celotex Corporation (Celotex), and W. R. Grace & Company (Grace). The issues on appeal relate to whether the statute of limitations bars the School District's action against each of the several respondents.

We affirm the grant of summary judgment to Bonitz, King, Celotex, and Grace. We reverse the grant of summary judgment to Lewis, Dargan, and G.M.K. and remand the case for trial.

The School District contracted with Dargan to construct a building to house Dillon County High School. Construction began in 1970 with the roof being completed the same year. The building was dedicated in September, 1970, and was completely finished by January, 1971. G.M.K. served as the project's architect, and Johnson and King served as its engineer. Bonitz installed the metal roof work and the roof's concrete deck and acoustical ceiling. Grace provided the roof's decking material, and Lewis installed the roofing membrane, metal flashing, and roof balance. Celotex manufactured roofing materials used in the construction of the roof.

The first report of a leak in the roof occurred in October, 1970. Other leaks were found in December, 1970. The problem with the roof became a persistent one.

As early as November 30, 1972, G.M.K. in a letter to the Chairman of the School District's Board of Trustees referred to the problem as a "continual problem" and suggested involving the county attorney if the situation were not soon remedied. Despite assurances from G.M.K. that "this problem will be resolved to your satisfaction" and despite meetings arranged by G.M.K. with Dargan and Lewis, matters did not improve.

More leaks were discovered in February, 1973, and in the months that followed. This discovery prompted G.M.K. and Lewis to agree with the School District that "the roof had leaked from the beginning and ... the warranty would not

commence until ... corrections had been made and the roof had performed satisfactorily."

On October 31, 1973, the School District wrote G.M.K. expressing "grave concern over the continuous roof leaks at the high school" and threatening legal action if corrective measures were not immediately undertaken. G.M.K. notified Dargan of the threat and on November 9, 1973, Dargan in turn notified Lewis. Dargan also informed Lewis of "a job-site meeting" scheduled by G.M.K. and reminded Lewis that the problem had been a "continuous" one that "must be resolved ... without any court action."

The same day Dargan wrote G.M.K. confirming G.M.K.'s employment of a roofing expert to investigate the leaks at the high school. Dargan also confirmed its understanding that G.M.K. had made the School District aware of the meeting and that the School Board would "await any action until after this meeting."

After meeting with Lewis and Dillon High School's principal on December 11, 1973, G.M.K.'s roofing expert on December 28, 1973, reported his findings to G.M.K. and made several recommendations to correct the problems with the roof. Two weeks later, G.M.K., Dargan, and Lewis met with the district superintendent at the high school to discuss the roof situation.

G.M.K. thereafter wrote the School District advising it that the roofing expert found "no deficiencies in construction or design and that the roof was in good condition." Nonetheless, it admitted that the roof had "an unusual number of small problems." G.M.K. also informed the School District that it had isolated all but a few of the leaks and that Lewis had "agreed to make the necessary repairs." G.M.K. closed its letter acknowledging that "these leaks have been a constant source of irritation and aggravation" to the School District and that G.M.K. "appreciate[d] the [School District's] patience and understanding."

Lewis repaired the roof during the spring of 1974. The roof, however, continued to leak damaging furnishings, books, and equipment and impairing school operations.

The School District retained counsel. On September 18, 1974, he wrote G.M.K. to report that the roof still leaked and sent copies of his letter to Dargan and Lewis. Counsel urged

the parties to "unite and commence immediate action to alleviate these roof leaks."

G.M.K. replied to counsel's letter and conceded the situation involving the leaks "obviously has not been corrected." It advised counsel, however, that another roofing consultant had been retained "to help us solve the problems." G.M.K. sent a copy of its letter to Dargan.

Dargan subsequently wrote G.M.K. observing that the School District was "getting extremely uneasy about this roof" and inquired of G.M.K. whether "there is anything that we should be doing." G.M.K. responded that it had spoken with the School District's attorney and had asked the "school maintenance superintendent ... to help us in solving the problems." G.M.K. noted in its letter the attorney "was seemingly understanding."

Meanwhile, new leaks developed in the roof and were reported to G.M.K. The latter proposed a meeting at the school with the contractor. Dargan and Lewis met at the school with school district officials on January 24, 1975, to inspect the roof.

Afterward, G.M.K. outlined a plan to repair the leaks and Lewis undertook to make repairs to the roof apparently in accordance with the plan. Lewis, under pressure from Dargan, completed the repairs by the latter part of March, 1975.

A hard rain in May, 1975, however, revealed the presence of nine more leaks. Dargan, G.M.K., and Lewis again visited the school.

On June 4, 1975, G.M.K. advised the School District of its meeting with Dargan and Lewis and of their plan to correct the new leaks by installing additional flashing and replacing a portion of the roof membrane. This work was completed between August 12 and November 11, 1975.

Upon the completion of the work, G.M.K. wrote the School District suggesting it "keep a close look-out to determine if any further leaks develop." G.M.K. promised to clean carpets and walls "[a]s soon as we can determine if the leaks have been corrected."

Notwithstanding the repair, problems surfaced.

The School District's attorney wrote G.M.K. on December 30, 1975, and mailed copies of his letter to "all concerned." He advised G.M.K. of the reoccurrence of old leaks and the

appearance of new ones and indicated the School District had retained its own roofing expert.

His letter also summarized a report made by the expert to the School District and warned G.M.K. that if the "[a]rchitect and the contractors concerned" failed "within a reasonable period of time" to comply with the School District's recommendation to submit plans and specifications to the School District for the correction of the roof problems identified by its expert the School District would have "no other alternative than to enter suit for damages against all parties concerned."

G.M.K. immediately scheduled a meeting with the School District's roofing expert. They, together with the district superintendent, and representatives from Dargan, Lewis, and Celotex, conducted a conference at the school on January 29, 1976, for the purpose of discussing the roof problems.

Lewis's additional repair work performed in August, 1976, was inspected by G.M.K. The School District, however, advised G.M.K. of more leaks in September and November, 1976, and again in October, 1977.

Another effort to repair the roof was made in August, 1978. Lewis again performed the work and G.M.K. supervised it. Celotex furnished the materials.

The effort, however, failed. In a letter to the School District dated November 8, 1979, G.M.K. recommended additional repairs be attempted and a lawsuit be instituted against the contractor.

A roofing expert retained by the School District thereafter investigated the roof and reported his findings in March, 1980. He determined that a major portion of the leakage occurred in areas previously repaired and concluded that the leakage resulted "from the same causes that existed in 1975" when he last inspected the roof.

The roofing expert prepared another report in August, 1980. The report noted that the roof exhibited deficiencies in workmanship and in design. The report also disclosed that the venting of the roof was possibly inadequate and that the roofing membrane had completely deteriorated. G.M.K. sent copies of this report to Dargan, Lewis, Celotex, King, and Bonitz on September 9, 1980.

Two months later, G.M.K. made a settlement offer to the School District on behalf of itself, "the general contractor,

roofing contractor, roof deck supplier, roofing materials supplier, and structural engineer." They offered to pay a portion of the costs required to re-roof the building. The School District rejected the offer.

In January, 1981, however, an agreement was reached between the School District and all respondents except, apparently, Grace. In a letter dated February 9, 1981, and addressed to the School District's attorney, G.M.K. summarized the agreement in which it and the others agreed to provide the school with a new roof. G.M.K. ended its letter by stating that "it is a relief to everyone involved to have a solution in sight and especially out of court."

The agreement never was concluded.

This action began on June 29, 1981. The complaint alleges causes of action based on negligence, breach of warranty, and strict liability.

Each respondent asserted the statute of limitations in defense of the action and moved for summary judgment.

The circuit court granted the respondents' motions for summary judgment holding the six-year statute of limitations prescribed by Sections 15-3-510[1] of the South Carolina Code of Laws (1976) and 15-3-530(5)[2] thereof, as amended, barred the School District's suit.

In reaching this conclusion, the circuit court held that the statute of limitations began to run in November, 1972, when the School District either discovered or could have discovered by the exercise of reasonable diligence that the roof to its building was defective.[3]

---

[1] Section 15-3-510 of the Code provides:

"The periods for the commencement of actions other than for the recovery of real property shall be prescribed in the following sections."

[2] Section 15-3-530 provides:

"Within six years:

(5) An action for criminal conversation or for any other injury to the person or rights of another, not arising on contract, not hereinafter enumerated. . . ."

[3] Section 15-3-535, enacted in 1977 [see 1977 S. C. Acts 182 § 5] requires the application of the discovery rule in certain cases. *Viz*:

"Except as to actions initiated under § 15-3-545 of the 1976 Code, all actions initiated under Item 5 of § 15-3-530 as amended, shall be commenced within six years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action."

The circuit court also held inapplicable the "continuing treatment" exception to the statute of limitations and refused to hold the respondents were estopped to assert the statute of limitations as a defense to the School District's claim.

I.

The School District argues first that the statute of limitations did not begin to run until 1980 when it first learned its roof was irreparably damaged and required complete replacement.

The courts of South Carolina have adopted the "discovery rule" in determining when a cause of action accrues. *See Brown v. Sandwood Development Corporation*, 277 S. C. 581, 291 S. E. (2d) 375 (1982); *Campus Sweater v. M. B. Kahn*, 515 F. Supp. 64 (D.S.C. 1979), *aff'd*, 644 F. (2d) 877 (4th Cir. 1981); *Gattis v. Chavez*, 413 F. Supp. 33 (D.S.C. 1976). Under the discovery rule, the statute does not begin to run from the date the negligent act or the breach of contract occurred; rather, the statute runs from the date the injury resulting from the wrongful conduct either is discovered or may be discovered by the exercise of reasonable diligence. *Snell v. Columbia Gun Exchange, Inc.*, 276 S. C. 301, 278 S. E. (2d) 333 (1981).

The circuit court found that by November, 1972, the School District knew or should have known by the exercise of reasonable diligence that it had a cause of action against the respondents for the faulty construction of the school's roof. The School District challenges this finding on the basis it did not know prior to March, 1980, its roof was irreparable.

The fact, however, the School District did not appreciate the full extent of the damage until later is immaterial. *Town of Mansfield v. G.A.F. Corporation*, 5 Mass. App. 551, 364 N.E. (2d) 1292 (1977). The statute of limitations period began to run at the point in time when the School District either discovered or reasonably should have discovered it had a serious roof problem and not when it learned it needed a new roof. *See Cluett, Peabody & Company, Inc. v. Campbell, Rea, Hayes & Large*, 492 F. Supp. 67 (M.D.Pa. 1980); *Friends University v. W. R. Grace & Co.*, 227 Kan. 559, 608 P. (2d) 936 (1980); *A. J.*

*Aberman, Inc. v. Funk Building Corporation,* 278 Pa. Super. 385, 420 A. (2d) 594 (1980); *Unified School District No. 490 v. Celotex Corporation,* 6 Kan. App. (2d) 346, 629 P. (2d) 196 (1981); *Grand Island School District #2 of Hall County v. The Celotex Corporation,* 203 Neb. 559, 279 N.W. (2d) 603 (1979): *Union School District No. 20 v. Lench,* 134 Vt. 424, 365 A. (2d) 508 (1976).

Like the circuit court, we are satisfied that by November, 1972, when the architect for the project referred to the roofing problem as a "continual problem" and suggested possibly involving the county attorney, the School District either knew or reasonably should have known its problem with the roof was a serious one. It is evident the School District by that time "enjoyed a right to pursue an action for the costs of making the roof water-tight, including, if necessary, the cost of replacing the entire roof." *Cluett, Peabody & Company, Inc. v. Campbell, Rea, Hayes & Large,* 492 F. Supp. at 75.

Since the record shows there is no genuine issue of material fact regarding when the School District either discovered or reasonably should have discovered the existence of a serious roof problem, the circuit court properly granted the respondents summary judgment on this issue. S.C.CIR.CT.R. 44(c). In affirming the circuit court in this regard, we note that no exception raises the question of whether a jury issue exists concerning when the School District either discovered or reasonably should have discovered it had a serious problem with the roof. *See Brown v. Finger,* 240 S. C. 102, 124 S. E. (2d) 781 (1962); *cf. Cluett, Peabody & Co. v. Campbell, Rea, Hayes & Large,* 492 F. Supp. at 75 n. 10 ("Whether the statute has run on a claim ... is generally a question of law for the judge.").

II.

The School District next contends the continuous ■ efforts on the part of certain respondents to repair the roof tolled the statute of limitations as to those respondents.

As far as we can determine, the Supreme Court of this state has never applied, at least not in a case involving either negligence, breach of warranty, or strict liability, the so-called "continuous treatment" exception to the general

rule governing the accrual of a cause of action. *See* Annot., 90 A. L. R. (3d) 507 (1979). We doubt if the Supreme Court would do so, especially since the "discovery" rule is applicable in South Carolina [*see Brown v. Sandwood Development Corporation, supra; Campus Sweater v. M. B. Kahn, supra;* S. C. Code of Laws § 15-3-535 (Cum. Supp. 1984)] and is itself an exception to the traditional rule of accrual. *See Gattis v. Chavez, supra.*

Indeed, our research discloses no case adopting the "continuous treatment" exception where the "discovery" rule is in effect. As Judge Hemphill observed in *Gattis*, the "continuous treatment" exception is "on the whole ... simply an aberrant form of the traditional rule which some courts seem to have adopted either to do justice in a specific case or to present the appearance of having effected a compromise between two antithetical rules." 413 F. Supp. at 39.

Although the South Carolina Supreme Court, as we noted, has not addressed this issue, a case decided by a United States District Court in Pennsylvania is in point. In *Cluett, Peabody & Company, Inc. v. Campbell, Rea, Hayes & Large, supra,* the court applied the "discovery rule" and held the plaintiff's claims concerning the construction of a roof were barred by the statute of limitations. As here, the defendants in *Cluett* made numerous efforts without success over a long period of time to remedy a leaking roof. The court rejected the "continuing contract" theory advanced by the plaintiff reasoning that "the unacceptable consequence of [the plaintiff's] argument is that a cause of action for breach of warranty or negligent performance ... would never accrue so long as the defendants periodically did some repair work, however ineffectual." 492 F. Supp. at 77.

We decline, therefore, to apply the "continuous treatment" exception to any of the respondents here including G.M.K., the architect. *Contra County of Broome v. Vincent J. Smith, Inc.,* 78 Misc. (2d) 889, 358 N.Y.S. (2d) 998 (1974). The circuit court properly rejected the exception in granting the respondents summary judgment.

### III.

The School District's last argument concerns whether the respondents are equitably estopped from asserting the statute of limitations in bar of its action. The School District

maintains that genuine issues of fact exist regarding whether the respondents by their promises and efforts to repair the roof lulled it into a false sense of security and induced it to delay the filing of suit before the running of the statute. We agree, but only as to certain respondents, namely, G.M.K., Dargan, and Lewis.

In a proper case, the doctrine of equitable estoppel may prevent resort to the statute of limitations. *Servomation Corporation v. Hickory Construction Co.*, 70 N. C. App. 309, 318 S. E. (2d) 904 (1984), *remanded*, 312 N. C. 794, 325 S. E. (2d) 632 (1985); *City of Bedford v. James Leffel & Co.*, 558 F. (2d) 216 (4th Cir. 1977); 51 Am. Jur. (2d) *Limitation of Actions* § 431 at 900 (1970): *see Clements v. Greenville County*, 246 S. C. 20, 142 S. E. (2d) 212 (1965). A defendant will be estopped to assert the statute of limitations in bar of a plaintiff's claim when the delay that otherwise would give operation to the statute has been induced by the defendant's conduct. 53 C. J. S. *Limitations of Actions* § 25 at 962-64 (1948).

> The doctrine is, of course, most clearly applicable where the aggrieved party's delay in bringing suit was caused by his opponent's intentional misrepresentation; but deceit is not an essential element of estoppel. *T . . . v. T . . .* (1976) 216 Va. 867, 224 S. E. (2d) 148, 152, *citing United States v. Fidelity and Casualty Co. of New York* (4th Cir. 1968) 402 F. (2d) 893, 898. It is sufficient that the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire. *See, e.g., T . . . v. T . . ., supra; United States v. Fidelity and Casualty Co. of New York, supra* at 897-98; *Bergeron v. Mansour* (1st Cir. 1945) 152 F. (2d) 27, 30-31; *id.* at 33 (concurring opinion of Magruder, J.); and *Howard v. West Jersey & S.S.R. Co., supra* [102 N.J. Eq. 517, 141 A. 755].

*City of Bedford v. James Leffel & Co.*, 558 F. (2d) at 218.

The conduct may involve either inducing the plaintiff to believe that an amicable adjustment of the claim will be made without suit or inducing the plaintiff in some other way to forbear exercising his right to sue. 53 C. J. S. *Limitations of Actions* § 25 at 966 (1948). Some courts hold that repairs by a defendant may toll the statute of

limitations. *See A. J. Aberman, Inc. v. Funk Building Corporation,* 278 Pa. Super. at 400, 420 A. (2d) at 602. One's assurances to an injured party that defects can be corrected coupled with his attempts to correct them is conduct that "may lead the injured party to reasonably believe that it will receive satisfaction without resort to litigation." *City of Bedford v. James Leffel & Co.,* 558 F. (2d) at 218.

The question of whether a defendant's conduct lulled a plaintiff into a false sense of security and thereby prevented the plaintiff from filing suit within the statutory period is ordinarily one of fact for a jury to determine. *See Lovell v. C. A. Timbes, Inc.,* 263 S. C. 384, 210 S. E. (2d) 610 (1974). Here, however, the issue was decided by the circuit court on motions for summary judgment.

In considering the issue of whether the circuit court was correct in granting the respondents' motions for summary judgment, we are required to construe all ambiguities, conclusions, and inferences arising from the evidence most strongly against the respondents. *Piedmont Engineers, Architects and Planners, Inc. v. First Hartford Realty Corp.,* 278 S. C. 195, 293 S. E. (2d) 706 (1982). Summary judgment should be granted only where it is perfectly clear no genuine issue of material fact is involved and inquiry into the facts is not desirable to clarify application of the law. *Hudson v. Zenith Engraving Co., Inc.,* 273 S. C. 766, 259 S. E. (2d) 812 (1979); *South Carolina Electric & Gas Company v. Combustion Engineering, Inc.,* 283 S. C. 182, 322 S. E. (2d) 453, 455 (Ct. App. 1984).

In our view, one could reasonably infer from the correspondence found in the record and from the employment of a roofing expert, the visits to the school either to conduct meetings relating to roof repairs or to investigate new roof problems, and the numerous attempts to repair the roof, that G.M.K., Dargan, and Lewis assured the School District its problems with the roof would be corrected and litigation would not be required.

We therefore hold a jury question exists regarding whether G.M.K., Dargan, and Lewis invited the very delay they now assert as a defense to the School District's claim. *City of Bedford v. James Leffel & Co., supra; see Nowell v. Great Atlantic & Pacific Tea Co.,* 250 N. C. 575, 108 S. E. (2d) 889 (1959). Reasonable men could differ on the issue of

equitable estoppel in this instance. *Walker Manufacturing Co. v. Dickerson, Inc.*, 560 F. (2d) 1184 (4th Cir. 1977), *appeal after remand*, 619 F. (2d) 305 (4th Cir. 1980).

Although the circuit court erred in granting G.M.K., Dargan, and Lewis summary judgment, the record contains no evidence that either Bonitz, King, Celotex or Grace somehow induced the School District within the limitations period to delay bringing its action. The School District all but concedes the point both in its oral argument before this court and in its supplemental brief. The circuit court did not err, then, in granting these four respondents summary judgment. Accordingly, the judgment appealed from is

Affirmed in part, reversed in part, and remanded.

GARDNER and CURETON, JJ., concur.