500 S.E.2d 204

**William T. MAHER, Respondent,**

v.

**TIETEX CORPORATION, a South Carolina Corporation, Appellant.**

**No. 2844.**

Court of Appeals of South Carolina.

Heard Jan. 7, 1998.

Decided May 11, 1998.

Rehearing Denied June 19, 1998.

A. Marvin Quattlebaum, Jr., of Nelson, Mullins, Riley & Scarborough, Greenville, for appellant.

Matthew A. Henderson, of Henderson, Brandt & Vieth, Spartanburg, for respondent.

CURETON, Judge:

Tietex Corporation (Tietex) appeals from a jury verdict against it in favor of William T. Maher (Maher), in Maher's breach of contract suit against Tietex. Tietex asserts Maher's breach of contract action is barred by the statute of limitations. We reverse and remand.

## I. FACTS

Tietex is a company that manufactures a number of things including tickings, which is the fabric that covers mattresses. Prior to 1985, Tietex sold its fabric to middlemen who in turn sold it to mattress manufacturers. In 1985, Tietex formed its Tickings Division (Tickings), in order to skip the middlemen and sell directly to the manufacturers. Maher, who had a good job with another company, was hired to work for Tickings in 1985. His June 25, 1985 offer letter provided for a "fifty percent bonus plan":

Fifty percent (50%) of the pre-tax profit of the Tietex Tickings business would be divided among the direct sales personnel, including yourself, in a manner to be determined.

At the end of the first year no bonuses were distributed. In 1987, Tickings produced a pre-tax profit, and Maher accordingly received a $28,000 bonus. In September 1987, Tietex decided to end the "fifty percent bonus plan" because the growth of Tickings's profits meant the small number of people entitled to the plan were going to receive excessive bonuses. A September 1987 letter from the company's president to a board member indicated that all the individuals subject to the "fifty percent bonus plan" had been informed that it had ended and a new plan had begun. This new plan was discretionary and was not based on Tickings's pre-tax profitability. Maher was not provided written notice that the plan had been terminated, and he maintains that he was never informed of this decision.

During the period between 1987 and 1994, Maher achieved a series of promotions, including one to that of vice president of Tietex. However, beginning in April 1991, Maher went through a series of demotions and reassignments, until he was finally terminated in 1994. During this period, Maher testified he discussed the "fifty percent bonus plan" with a number

of superiors, but that he never received a satisfactory answer as to its status. Finally, in early 1994, the head of human resources informed Maher that the plan had been terminated in 1987.

At trial, the former controller of Tietex testified that he added unjustified costs and expenses to the financial reports on Tickings in order to reduce the apparent amount of its profits.

Maher commenced his actions on September 28, 1994, the day after he was terminated. In his complaint, he asserted breach of contract, breach of contract accompanied by a fraudulent act, and violation of the South Carolina Payment of Wages Act. After trial in November 1996, the jury returned a verdict for $94,000.00 on Maher's breach of contract claim. Maher elected that remedy over the jury's award of $47,800 on his claim pursuant to the Payment of Wages Act, S.C.Code Ann. § 41–10–10 to –110 (Supp.1997). On appeal, Tietex asserts that Maher's breach of contract claim is barred by the applicable statute of limitations, and thus the trial court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict.

## II. STATUTE OF LIMITATIONS

Tietex first contends that the trial judge erred in failing to grant its motion for directed verdict because the only reasonable inference from the record is that Maher failed to bring his breach of contract claim soon enough to meet the requirements of the statute of limitations. We agree.

■ When reviewing a motion for directed verdict, this court must consider all evidence in the light most favorable to the nonmoving party, and may only reverse a jury's verdict if the factual findings implicit within it are contrary to the only reasonable inference from the evidence. *See generally Orders Distrib. Co. v. Newsome Carpets & Wallcovering*, 308 S.C. 429, 418 S.E.2d 550 (1992).

### A. Discovery Rule

■ An action for breach of contract must be brought within three years from the date the action accrues. S.C.Code Ann. § 15–3–530(1) (Supp.1997). The discovery rule deter-

mines the date of accrual for a breach of contract action. *Santee Portland Cement Co. v. Daniel Int'l Corp.*, 299 S.C. 269, 384 S.E.2d 693 (1989), *overruled on other grounds by Atlas Food Sys. and Servs., Inc. v. Crane Nat'l Vendors Div.*, 319 S.C. 556, 462 S.E.2d 858 (1995). Pursuant to the discovery rule, a breach of contract action accrues not on the date of the breach, but rather on the date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence. *Dillon County Sch. Dist. No. Two v. Lewis Sheet Metal Works, Inc.*, 286 S.C. 207, 332 S.E.2d 555 (Ct.App.1985), *cert. dismissed by* 288 S.C. 468, 343 S.E.2d 613 (1986), *and overruled on other grounds by Atlas Food*, 319 S.C. 556, 462 S.E.2d 858.

A cause of action should have been discovered through exercise of reasonable diligence when the facts and circumstances would have put a person of common knowledge and experience on notice that some right had been invaded or a claim against another party might exist. *Benton v. Roger C. Peace Hosp.*, 313 S.C. 520, 443 S.E.2d 537 (1994) (citing *Snell v. Columbia Gun Exch., Inc.*, 276 S.C. 301, 278 S.E.2d 333 (1981)). The test is objective. *Wiggins v. Edwards*, 314 S.C. 126, 442 S.E.2d 169 (1994). The statute is not delayed until the injured party seeks advice of counsel or develops a full-blown theory of recovery; instead, reasonable diligence requires a plaintiff to "act with some promptness." *Snell*, 276 S.C. at 303, 278 S.E.2d at 334. The jury must resolve conflicting evidence as to whether a claimant knew or should have known he had a cause of action. *Garner v. Houck*, 312 S.C. 481, 435 S.E.2d 847 (1993).

Maher filed his lawsuit on September 28, 1994. Thus, the "cutoff" date relevant to application of the discovery rule is September 28, 1991.

Most relevant to our decision that Maher's breach of contract action is barred is his testimony regarding discussions he had in 1989 and 1990 with his superior, Bob Lawson, about the "fifty percent bonus plan":

> MAHER: In 1989, I had a conversation with Bob Lawson regarding some of the excessive charges that were being charged to Tietex Tickings. Part of this conversation also included some question marks I had about the bonus plan.

And as Mr. Lawson, as I had indicated earlier, Mr. Lawson never really gave me a ... direct answer one way or the other to the allocation charges nor did he actually respond to my inquiry regarding the fifty percent bonus plan. We had a similar conversation, and that was actually in ... 1989, there's, very similar conversation in 1990 regarding the same type of questions about the fifty percent bonus plan. Mr. Lawson was, was great in singing and dancing and not answering a question directly, and I kind of walked away not really getting an answer to those questions.

\* \* \*

MAHER: [Lawson's] singing and dancing was part of telling me that I was advancing within the company. He had originally told me when I was going to become general manager of Tietex Tickings, and that had come to fruition. In essence, a little bit later on, ... year and a half later approximately, he told me that it looks like you're going to become corporate vice president. His singing and dancing was these ... promotions that you're getting, you are dancing within the company. You look ... like you're advancing within the company and the potential with the company is extremely good.

DEFENSE ATTORNEY: Isn't it true ... you interpreted that as being advice to forget about the bonus plan because bigger and better things are coming your way?

MAHER: I don't believe any comment or statement was ever made about forget about the bonus plan.

DEFENSE ATTORNEY: [S]o ... Lawson never [led] you to believe that you should quit asking questions about the bonus plan and focus on your future?

MAHER: He ... [led] me to believe that that might be a ... good direction for me to be going in. ... Because of the fact that, as becoming an officer of the company, I would have the opportunity to have other programs or a program available to me that was called the E.P.U. Program, which was an executive participation unit program that was common knowledge other officers within the company had available to them. Along with that, there was a profit sharing program for those officers of the company and a phantom

stock option program. All these three things were available to key executives within the company.

\* \* \*

DEFENSE ATTORNEY: ... [Lawson] suggested to you, basically held a carrot out, said, ... forget about the plan, there's a greater financial reward down the road?

MAHER: I don't believe ... Lawson ever said to me forget about the plan.... The carrot he was holding out in front of me was my advancement within the company, and knowing about these other bonus plans that might be available to me.

DEFENSE ATTORNEY: [A]nd you did rise within the company, correct?

MAHER: Yes.

\* \* \*

DEFENSE ATTORNEY: And that in April of 1991, you were demoted?

MAHER: Yes.

Maher's testimony reveals he believed at the time of these conversations that he was not getting the bonus money to which he felt entitled. Twice, in 1989 and 1990, he raised his "questions" about the plan to Lawson, and twice, by his own words, he "walked away" without "really getting" a satisfactory response to his concerns. Even though Maher denied that Lawson told him to "forget about the bonus plan," it is clear from his testimony that he understood Lawson was telling him that his advancement would lead to other forms of bonus compensation which would offset the fact that he was not getting the money from the "fifty percent bonus plan." In our view, Maher's admitted dissatisfaction with this response is clear evidence that he knew, could have known, or should have known at that time that he might have a cause of action over the fifty percent bonus plan. *Cf. Kreutner v. David,* 320 S.C. 283, 465 S.E.2d 88 (1995) (plaintiff should have been aware of potential breach of fiduciary duty, since attorney failed to respond over an eighteen-month period to repeated requests for a mortgage and title policy). *Cf. generally Dillon,* 286 S.C. at 215, 332 S.E.2d at 559 (limitations period runs from day School District "discovered or reasonably should have discovered it had a serious roof problem and not when it learned it

needed a new roof"). Certainly, by the time Maher was first demoted in April of 1991, it should have been apparent to him that the company had withdrawn the "carrot" of advancement with which Lawson had attempted to ease Maher's concerns about money due him under the "fifty percent bonus plan."

South Carolina's statute of limitations requires "very little to start the clock." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir.1994) (applying South Carolina law). Accordingly, we hold the only reasonable inference from the evidence is that, no later than April 1991, the facts and circumstances of this case would have put a person of common knowledge and experience on notice that some right of Maher's had been invaded or a claim against Tietex might exist.

## B. Estoppel

■ Nevertheless, Maher contends Tietex's intentional misrepresentation of Tickings's profits in the financial information, as well as its failure to notify him of the plan's termination until 1994, estops it from asserting that his action is barred by the statute of limitations. We disagree.

South Carolina cases have applied estoppel in a number of different situations involving the statute of limitations. In Workers' Compensation law, estoppel will toll the statute of limitations during the period of reliance if an employer "induces a claimant to believe the claim is compensable and will be taken care of without its being filed within the period required by statute." *Rogers v. Spartanburg Regional Medical Ctr.*, 328 S.C. 415, 419, 491 S.E.2d 708, 710 (Ct.App.1997) (citing *Hopkins v. Floyd's Wholesale*, 299 S.C. 127, 382 S.E.2d 907 (1989)), *cert. granted*, (Jan. 22, 1998). Similarly, in situations involving settlements in civil cases, one will be equitably estopped to defend with the statute of limitations by either (a) expressly representing that the claim will be settled without litigation, or (b) conduct which suggests that a lawsuit is not necessary. *See, e.g. Black v. Lexington Sch. Dist. No. Two*, 327 S.C. 55, 488 S.E.2d 327 (1997) (citing and discussing various other cases on this issue). In *Strong v. University of South Carolina School of Medicine*, 316 S.C. 189, 447 S.E.2d 850 (1994), the court discussed the fraudulent concealment defense to the statute of limitations, which flows from the duty

to disclose inherent in the relationship between physicians and patients.

Finally, the general doctrine of equitable estoppel has been applied to affect the running of the statute of limitations in other situations besides those of unconsummated settlement. Equitable estoppel operates to deny a party "the right to plead or prove an otherwise important fact." *Parker v. Parker,* 313 S.C. 482, 487, 443 S.E.2d 388, 391 (1994).

> The elements of estoppel as to the party estopped are (1) conduct by the party estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the true facts. As to the party claiming estoppel, the elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; and (2) reliance upon the conduct of the party estopped.

*Brayboy v. Ewing,* 311 S.C. 272, 273, 428 S.E.2d 731, 732 (Ct.App.1993). *See also Brading v. County of Georgetown,* 327 S.C. 107, 490 S.E.2d 4 (1997) *and LaRosa v. Johnston,* 328 S.C. 293, 493 S.E.2d 100 (Ct.App.1997) (both cases also noting the additional requirement of prejudicial change of position). It is this expression of the doctrine of equitable estoppel which could apply to the case at bar.[1]

A necessary element of equitable estoppel is Maher's reliance on the misconduct of Tietex. Certainly, we in no way would condone a company that adjusted its financial information in order to reduce the amount of compensation legitimately due to its employees. But although Maher testified he asked Lawson in 1989 about "excessive charges" to Tickings, he also testified unequivocally that he never, at least prior to September 1991, compared the division's profits to his bonus entitlements to determine whether he was receiving the appropriate amount. Accordingly, Maher did not rely on any

---

1. In *Gaymon v. Richland Memorial Hosp.,* 327 S.C. 66, 488 S.E.2d 332 (1997), our state Supreme Court clarified that the issue of equitable estoppel, when interposed in a law case, should be tried by the judge. Even though there was no discussion in the record on appeal whatsoever of the equitable estoppel issue, and all issues were submitted to the jury, we believe that a claim of equitable estoppel in this case would fail under either a law or equity standard of review.

misrepresentation or deception as to the financial information, and thus any claim of equitable estoppel based on this misconduct fails for lack of this essential element.

■ Maher also claims Tietex was estopped because it failed to notify him until 1994 that the "fifty percent bonus plan" had been eliminated. We disagree. Another essential element of equitable estoppel requires that the party claiming estoppel lacked either knowledge, or the means of knowledge, of the true facts. Maher testified that he was dissatisfied with Lawson's equivocal answers about the plan in 1989 and 1990, but that after Lawson explained other potential for compensation from advancement, he "walked away." In 1992, Maher showed his offer letter to his new supervisor, but "once again, nothing was addressed or discussed with [him]." In 1993, Maher showed his offer letter to a Tietex attorney. Finally, in January of 1994, Maher pressed the matter with both the company's chairman of the board as well as the head of human resources. In February 1994, Maher received a memorandum from the head of human resources, which informed him that the plan was terminated following fiscal year 1987, and which noted that "I find it somewhat difficult to believe you feel you are entitled to payments under this bonus arrangement when you have not inquired or requested a payment during the seven years since you last received a payment under this arrangement."

■ Certainly, silence which amounts to misrepresentation or concealment of facts can satisfy the "conduct" element of the test for equitable estoppel. *Berkeley Elec. Coop., Inc. v. Town of Mount Pleasant,* 308 S.C. 205, 417 S.E.2d 579 (1992). However, we conclude that Maher had knowledge or the means of knowledge of the true facts, but failed, prior to 1994, to press the matter until he obtained an unequivocal answer from company executives about the status of the bonus plan.

### C. Actual Notice as Date of Breach

■ Maher next contends that any breach did not occur until 1994, when he was given actual notice of termination of the fifty percent bonus plan. He notes that *Fleming v. Borden,* 316 S.C. 452, 450 S.E.2d 589 (1994), holds that an employer who creates a unilateral implied employment con-

tract with an employee handbook may modify it by giving actual notice to the employee. However, this rule addresses how employers *comply* with the law, and does not address the date upon which they violate it. The date an employee should have discovered the breach of a contract can be vastly different from the date when he received actual notice of the breach from the employer.

### D. Continuing Wrong

In a similar vein, Maher contends that his action was timely commenced because Tietex breached the contract every year from 1988 until Maher's termination in 1994. He argues that we should apply by analogy the "continuing wrong" doctrine utilized in lawsuits pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) (1994). In instances of Title VII continuing wrongs, courts have held claims for all of the wrongful conduct to be timely, if any part of the wrongful conduct occurred within the limitations period. *See generally Berry v. Board of Supervisors,* 715 F.2d 971 (5th Cir.1983).

There is no appeal in this case from the jury's decision that Maher had an enforceable employment contract with regard to the bonus plan, so such is the law of the case. Our research has revealed cases which addressed similar "continuing wrong" breach of contract claims in employment situations. In *Smith v. Beasley,* 504 N.E.2d 1028 (Ind.Ct.App.1987), the court rejected the contention that a limitations period ran from each paycheck, in an employee's lawsuit that he was unfairly denied a pay increase which was to be, upon certain conditions, 2% per year up to a maximum of 8%. In *Tull v. City of Albuquerque,* 120 N.M. 829, 907 P.2d 1010 (Ct.App. 1995), the court similarly refused to run the limitations period from each paycheck, in a claim by employees that the employer broke its promise to increase their pay after the employer increased their job responsibilities. The court held that the case presented a "single wrong with continuing effects," and noted:

> The only actionable wrong alleged by Plaintiffs in this case is the City's initial refusal to increase Plaintiffs' salaries. Although that wrong has continuing consequences in the form of lower paychecks, the continuing effects do not

extend the life of Plaintiffs' breach of contract cause of action, which is based solely on that initial refusal.

907 P.2d at 1013. *But see Hart v. International Tel. & Tel. Corp.* ., 546 S.W.2d 660 (Tex.Civ.App.1977) (where employee was to be paid commissions on a quarterly basis, commissions which had payment dates occurring outside of the limitations period were barred, but commissions with payment dates occurring within the limitations period were not barred).

In this case we find a single wrong with continuing effects. Tietex's "wrong" was the one-time unilateral abrogation of the "fifty percent bonus plan," and replacement of this plan with a purely discretionary bonus plan. Maher's action seeks redress for that unilateral abrogation. This "wrong" had continuing effects in that Maher's subsequent yearly bonuses were reduced or eliminated. The objective test in South Carolina's discovery rule is sufficient to allow plaintiffs the opportunity to discover and act upon the original breach, without need for application of the "continuing wrong" doctrine in this situation.[2] *Cf. Dillon,* 286 S.C. at 216–17, 332 S.E.2d at 560 (rejecting "continuous treatment" doctrine).

### E. Remand

At trial, the jury returned verdicts on both the breach of contract claim and the Wage Payment Act claim. Maher then elected to recover on his breach of contract claim. Since we have reversed that claim based on the statute of limitations, we remand to the trial court for proceedings consistent with this opinion. *Cf. Lancaster v. Smithco, Inc.,* 241 S.C. 451, 128 S.E.2d 915 (1962) (party was not barred from bringing action for breach of general warranty, even though Supreme Court, on the basis of legally insufficient evidence to raise a factual issue, overturned prior fraud and deceit judgment based in

---

2. Of course, South Carolina law holds that an employee impliedly consents to a change in compensation if he continues to work without objection after actually or constructively knowing that the employer changed his compensation. *Estes v. Roper Temp. Servs., Inc.,* 304 S.C. 120, 403 S.E.2d 157 (Ct.App.1991), *cert. denied,* (July 25, 1991). Although both parties have addressed this estoppel doctrine in their briefs, since Tietex only appealed the statute of limitations on the contract claim, and we reverse on that issue, we do not further address whether Maher consented to the change in the bonus plan.

same facts); *Green v. Carder*, 276 Ark. 591, 637 S.W.2d 594, 595 (1982) ("[T]he election of a remedy which did not exist was no election at all."); *Rolf's Marina v. Rescue Serv. & Repair, Inc.*, 398 So.2d 842 (Fla.Dist.Ct.App.1981) (remanded case to allow appellant to proceed with formerly abandoned position, after appellant initially elected a remedy that ultimately proved to be legally unavailable after evidence developed at trial).

## III. CONCLUSION

We hold that Maher's breach of contract claim is barred by the statute of limitations. Accordingly, we

**REVERSE AND REMAND.**

HOWELL, C.J., and HOWARD, J., concur.