**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Wylie Neil Doyle, Timothy Lee, Anthony J. Mottola, III, and David Todd, Appellants,

v.

Horry County d/b/a Horry County Fire Rescue, Respondent.

Appellate Case No. 2017-000015

Appeal From Horry County
Larry B. Hyman, Jr., Circuit Court Judge

Unpublished Opinion No. 2019-UP-309
Heard June 6, 2019 – Filed August 28, 2019

**AFFIRMED**

James Paul Porter, of Cromer Babb Porter & Hicks, LLC, of Columbia, for Appellants.

Henrietta U. Golding, of Burr Forman McNair, and James Keith Gilliam, of Burr & Forman, LLP, both of Myrtle Beach, for Respondent.

**PER CURIAM:** Wylie Neil Doyle, Timothy Lee, Anthony J. Mottola, III, and David Todd (Employees) appeal an order of the trial court directing a verdict in

favor of Horry County d/b/a Horry County Fire Rescue (Employer) and the denial of Employees' motion for reconsideration and new trial in their suit for violation of the South Carolina Payment of Wages Act (Wages Act),[1] promissory estoppel, and unjust enrichment. On appeal, Employees argue the trial court erred in finding (1) the statute of limitations barred their claims, (2) the statute of limitations was not equitably tolled, and (3) Employer was not equitably estopped from asserting a statute of limitations defense. We affirm.

**FACTS**

In early 2008, the Horry County Administrator approved a proficiency pay (propay) increase for certain employees, including firefighter/paramedics, of the Horry County Department of Public Safety. In April 2008, Employer issued to each affected employee a "Statement of Wages" document, which detailed the employee's salary before and after the propay increase. In mid-to-late April 2008, Employees signed their respective Statements of Wages. At trial, Employees acknowledged they did not believe their salaries had been calculated correctly under propay when they signed their Statements of Wages. Employees brought their concerns regarding propay up the department chain of command; Doyle and Mottola also contacted Human Resources and Personnel (HR).[2] Neither Employees' chain of command nor HR addressed the substance of Employees' initial complaints.

Employees did not receive a "concrete" response to their complaints until 2013. Doyle testified the fire chief informed Employees he had met with the finance department and HR and they were working on fixing the propay issues. In summer 2014, the fire chief met with HR and the finance department and was told that their reconciliation showed no issue with Employee's salaries. The fire chief informed Employees that an audit had been performed and all persons had been paid correctly with the exception of three firefighters who had been overpaid and one firefighter/paramedic who had been underpaid.[3] Employees were told to contact HR if they had any further questions regarding their pay.

---

[1] S.C. Code Ann. §§ 41-10-10 to -110 (Supp. 2018).
[2] It is unclear from the record when Employees raised their initial concerns.
[3] According to Mottola, the fire chief told him that he was the individual who had been underpaid and directed him to contact HR if he had any further questions regarding his salary.

Employees commenced their actions on December 11, 2014. In their complaint, they asserted violation of the Wages Act, promissory estoppel, and unjust enrichment. A trial was held on September 20-21, 2016. At the close of Employees' case-in-chief, Employer moved for a directed verdict arguing Employees' causes of action were barred by the applicable Wages Act and South Carolina Tort Claims Act (Tort Claims Act) statutes of limitations.[4] Employer argued the calculation of Employees' salaries under propay in April 2008, and the signing of their respective Statements of Wages, was a single event with continuing effects. Employees argued the continuous accrual doctrine applied to this case; thus, each time they received a paycheck the statute of limitations began to run anew. Employees also asserted they were entitled to have the statute of limitations equitably tolled.

The trial court granted Employer's motion for a directed verdict, finding Employees' causes of action were barred by the applicable statutes of limitations. The trial court formally disposed of the case in a Form 4 order. Employees filed a motion for reconsideration and new trial, arguing the trial court erred by (1) failing to apply the continuous accrual doctrine to their Wages Act claims, (2) by rejecting their defense of equitable tolling, and (3) by failing to apply the doctrine of equitable estoppel. The trial court denied Employees' motion for reconsideration and new trial on December 9, 2016. In its order, the trial court held that pursuant to the discovery rule[5] and *Maher v. Tietex Corporation*,[6] the statute of limitations for Employees' Wages Act cause of action commenced with the issuance of the Statements of Wages signed by Employees. The trial court further held the doctrines of equitable tolling and equitable estoppel did not apply to Employees' Wages Act cause of action. This appeal follows.

---

[4] Employer asserted defenses under the statute of limitations of the Wages Act and the Tort Claims Act. *See* S.C. Code Ann. § 41-10-80(C) (Supp. 2018) (providing that under the Wages Act "[a]ny civil action for the recovery of wages must be commenced within three years after the wages become due"); S.C. Code Ann. § 15-78-100(a) (2005) (providing that under the Tort Claims Act, an action for damages "may be instituted at any time within two years after the loss was or should have been discovered").

[5] *See Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996) ("According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered.").

[6] 331 S.C. 371, 500 S.E.2d 204 (Ct. App. 1998).

**STANDARD OF REVIEW**

"In ruling on directed verdict motions, the trial court must view the evidence and all inferences which may reasonably be drawn therefrom in the light most favorable to the non-moving party." *Mullinax v. J.M. Brown Amusement Co., Inc.*, 333 S.C. 89, 92, 508 S.E.2d 848, 849 (1998). "If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury." *Id.* "In reviewing an order granting a directed verdict, the appellate court views the evidence and all reasonable inferences from the evidence in the light most favorable to the party against whom the directed verdict was granted." *Id.* "This Court will reverse the trial court only when there is no evidence to support the ruling below." *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999). "A trial judge's decision granting or denying a new trial will not be disturbed unless his decision is wholly unsupported by the evidence or the conclusions of law have been controlled by an error of law." *S.C. Dep't of Highways & Pub. Transp. v. E.S.I. Investments*, 332 S.C. 490, 496, 505 S.E.2d 593, 596 (1998).

**LAW/ANALYSIS**

**I.     STATUTE OF LIMITATIONS**

Employees argue the trial court erred in finding their Wages Act and equitable claims were barred by the statute of limitations because the statute of limitations in a pay case continuously accrues upon each underpayment.[7] We disagree.

"'Wages' means all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount . . . which are due to an employee under any employer policy or employment contract." S.C. Code Ann. § 41-10-10(2) (Supp. 2018). "Every employer in the State shall pay all wages due in lawful United States money or by negotiable warrant or check bearing even date with the payday." S.C. Code Ann. § 41-10-40(A) (Supp. 2018). Under the Wages Act, "[a]ny civil action for the recovery of wages must be commenced within three years after the wages become due." S.C. Code Ann. § 41-10-80(C) (Supp. 2018). Under the Tort Claims Act, an action for damages "may be instituted at any time

---

[7] Employees argue only that the trial court erred in finding that the statute of limitations barred their claims based on the assertion that their causes of action were continuously accruing; thus, we have analyzed whether Employees' causes of action were barred by the statute of limitations upon which the trial court relied.

within two years after the loss was or should have been discovered."  S.C. Code Ann. § 15-78-100(a) (2005).

"According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered."  *Dean*, 321 S.C. at 363, 468 S.E.2d at 647.  "The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct."  *Id*.  "The discovery rule is applicable to actions brought under the Tort Claims Act."  *Joubert v. S.C. Dep't of Soc. Servs.*, 341 S.C. 176, 190, 534 S.E.2d 1, 8 (Ct. App. 2000).

Employees first contend the statute of limitations on a statutory Wages Act claim is statutorily set and sections 41-10-40(A) and 41-10-80(C), when read together, "dictate[] the application of the continuous accrual doctrine to wage payment claims."  Thus, Employees assert that "a new actionable statute of limitations arose each time [Employees] received a biweekly paycheck . . . for the three years preceding this action's filing (December 11, 2014) and after."  Here, Employees failed to raise this argument to the trial court.  *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review.").  Employees did not raise this issue until they filed their motion for reconsideration and new trial.  *See Patterson v. Reid*, 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct. App. 1995) ("A party cannot for the first time raise an issue by way of a Rule 59(e)[, SCRCP,] motion which could have been raised at trial.");  *Stevens & Wilkinson of S.C., Inc. v. City of Columbia*, 409 S.C. 563, 567, 762 S.E.2d 693, 695 (2014) ("[A] party cannot use a Rule 59(e)[, SCRCP,] motion to advance an issue the party could have raised to the [trial] court prior to judgment, but did not.").  Therefore, to the extent Employees argue the statutory language of the Wages Act dictates the application of the continuous accrual doctrine to their statutory Wages Act claim, we find Employees failed to preserve this argument for appellate review.

Second, Employees argue their case is distinguishable from *Maher v. Tietex Corporation* because in *Maher*, this court ruled on a breach of contract claim and this case involves a statutory Wages Act claim and associated equitable claims. 331 S.C. at 375, 500 S.E.2d at 206.  Employees also suggest that the *Maher* court's remand to allow Maher to elect to pursue his remaining remedy under the Wages Act was an acknowledgement by the court that the Wages Act remedy was not barred by the statute of limitations; however, we believe the *Maher* court was procedurally required to remand the case, and such an action was not a comment on the merits of an unappealed, not-yet-elected remedy.  *Id.* at 384-85, 500 S.E.2d

at 211.  Employees further argue the continuous accrual doctrine allows for the statute of limitations to continuously accrue on their Wages Act and equitable claims.  Employees contend each wage underpayment gave rise to a new cause of action because the harm was continuous and abatable.

Viewing the evidence in the light most favorable to Employees, we find the trial court did not err in applying the discovery rule to Employees' Wages Act claims and related equitable claims.  *See Mullinax*, 333 S.C. at 92, 508 S.E.2d at 849 ("In reviewing an order granting a directed verdict, the appellate court views the evidence and all reasonable inferences from the evidence in the light most favorable to the party against whom the directed verdict was granted.").  Although Employees assert that the continuous accrual doctrine is applicable to their claims, we find *Maher* dictates our analysis.  331 S.C. 371, 500 S.E.2d 204.  In *Maher*, Maher was hired by Tietex Corporation (Tietex) in 1985 under a "fifty percent bonus plan."  *Id*. at 375, 500 S.E.2d at 206.  No bonuses were distributed during Maher's first year; at the end of his second year in 1987, Maher received $28,000.  *Id*.  Tietex then made the decision to end the "fifty percent bonus plan."  *Id*.  According to a letter from a board member, all individuals affected by the termination of the plan had been notified.  *Id*.  Maher contended that following his last bonus he had discussed the "fifty percent bonus plan" with superiors, but he was not notified until early 1994 that the bonus plan had been terminated.  *Id*. at 375-76, 500 S.E.2d at 206.  Maher sued Tietex for breach of contract and a violation of the Wages Act.  *Id*. at 376, 500 S.E.2d at 206.  Following a trial, the jury returned a verdict in the amount of $94,000 on Maher's breach of contract claim and $47,800 on his Wages Act claim; Maher elected to receive the breach of contract remedy.  *Id*.  On appeal before this court, Tietex argued Maher's breach of contract claim was barred by the statute of limitations; thus, the trial court erred in denying its motions for a directed verdict and judgment notwithstanding the verdict.  *Id*.  Maher argued he had timely commenced his action because every year from 1988 to his termination in 1994, Tietex breached the contract.  *Id*. at 383, 500 S.E.2d at 210.  This court, after discussing the manner in which other jurisdictions handled similar issues, found Tietex had committed a single wrong with continuing effects; "Tietex's 'wrong' was the one-time unilateral abrogation of the 'fifty percent bonus plan,' and replacement of this plan with a purely discretionary bonus plan."  *Id*. at 383-84, 500 S.E.2d at 210-11.  This court stated, "The objective test in South Carolina's discovery rule [was] sufficient to allow plaintiffs the opportunity to discover and act upon the original breach, without need for application of the 'continuing wrong' doctrine in this situation."  *Id*. at 384, 500 S.E.2d at 211.  Thus, it found Maher "knew, could have known, or should have known" at the time of a conversation with his superior in 1989 and again in

1990 that he might have a cause of action over the termination of the bonus plan. *Id.* at 379, 500 S.E.2d at 208.

Here, like in *Maher*, the dispute arose over a change in payment for work rendered. *Id.* at 375-76, 500 S.E.2d at 206. Maher argued that each time he should have been paid his yearly bonus, the statute of limitations began anew because it was a new "wrong," or new breach of contract. *Id.* at 383, 500 S.E.2d at 210. Similarly, Employees argue each time they were paid an amount they believed to be incorrect, was a "wrong" and the statute of limitations began to run anew. However, the *Maher* court found Tietex had committed a single wrong—unilaterally changing the bonus payment structure—with continuing effects, and further found that the discovery rule was sufficient to allow Maher the opportunity to discover a wrong. *Id.* at 383-84, 500 S.E.2d at 210-11. In this case, Employer changed the salaries of Employees in April 2008—an act—and that act had continuing effects in each subsequent paycheck. Therefore, under the discovery rule, the statute of limitations began to run when Employees knew or should have known they had a cause of action against Employer. *See Dean*, 321 S.C. at 363, 468 S.E.2d at 647 ("The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct."). Here, Employees admitted they believed their new salaries were incorrect at the time they signed their Statements of Wages in April 2008. Thus, the applicable statute of limitations would run from April 2008 and would bar Employees' claims raised in December 2014. *See* S.C. Code Ann. § 41-10-80(C) (Supp. 2018) (providing that claims under the Wages Act "must be commenced within three years after the wages become due"); S.C. Code Ann. § 15-78-100(a) (2005) (providing that under the Tort Claims Act, an action for damages "may be instituted at any time within two years after the loss was or should have been discovered"). Based on the specific facts of the case at hand and viewing the evidence in the light most favorable to Employees, we find the trial court did not err by applying the discovery rule and this court's holding in *Maher* in finding Employees' claims were barred by the applicable statute of limitations and granting Employer's motion for a directed verdict.

## II.   EQUITABLE TOLLING

Employees argue the trial court erred in holding it would be inappropriate to equitably toll the statute of limitations on their Wages Act and equitable causes of action. We disagree.

"'Tolling' refers to suspending or stopping the running of a statute of limitations; it is analogous to a clock stopping, then restarting." *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*, 386 S.C. 108, 115, 687 S.E.2d 29, 32 (2009) (quoting 51 Am. Jur. 2d Limitation of Actions § 169 (2000)). "Tolling may either temporarily suspend the running of the limitations period or delay the start of the limitations period." *Id.* (quoting 51 Am. Jur. 2d Limitation of Actions § 169 (2000).

"Equitable tolling is judicially created; it stems from the judiciary's inherent power to formulate rules of procedure where justice demands it." *Id.* "Where a statute sets a limitation period for action, courts have invoked the equitable tolling doctrine to suspend or extend the statutory period 'to ensure fundamental practicality and fairness.'" *Id.* (quoting *Rodriguez v. Superior Court*, 98 Cal. Rptr. 3d 728, 736 (2009)). "The party claiming the statute of limitations should be tolled bears the burden of establishing sufficient facts to justify its use." *Id.* "The equitable power of a court is not bound by cast-iron rules but exists to do fairness and is flexible and adaptable to particular exigencies so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other." *Id.* at 116-17, 687 S.E.2d at 33 (quoting *Hausman v. Hausman*, 199 S.W.3d 38, 42 (Tex. App. 2006)).

"[H]owever, . . . equitable tolling is a doctrine that should be used sparingly and only when the interests of justice compel its use." *Id.* at 117, 687 S.E.2d at 33. "[E]quitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control." *Id.* at 116, 687 S.E.2d at 32 (quoting *Ocana v. Am. Furniture Co.*, 91 P.3d 58, 66 (2004)). "[E]quitable tolling does not require a showing that the defendant has made a misrepresentation to the plaintiff." *Magnolia N. Prop. Owners' Assoc., Inc. v. Heritage Cmtys., Inc.*, 397 S.C. 348, 372, 725 S.E.2d 112, 125 (Ct. App. 2012).

Employees assert that "[a] determination in equity is not proper for a directed verdict motion in so far as determining what matters should be submitted to the jury." Here, Employees did not raise this issue to the trial court. *See Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733 ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review."). Thus, we find Employees have failed to preserve this issue for appellate review.

On the merits, Employees assert they worked actively to resolve the alleged underpayment, were told in writing and verbally that the propay issue was being reconciled, and reasonably believed Employer was going to resolve their alleged underpayment based on Employer's representation. Here, Employees' testimony

provides only that they raised their concerns to their chain of command and HR at some point following the signing of their Statements of Wages in 2008 and then neither took any other action nor received a substantive response from Employer until 2013. Nothing in the record suggests Employees were prevented from filing their case during this time. *See Hooper*, 386 S.C. at 116, 687 S.E.2d at 32 ("[E]quitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control." (quoting *Ocana*, 91 P.3d at 66)). Further, waiting approximately six years for Employer to provide a substantive response to a wage discrepancy issue is unreasonable. Therefore, viewing the evidence in the light most favorable to Employees, because Employees failed to establish a compelling reason to justify the use of the doctrine of equitable tolling, we find the trial court did not err in granting a directed verdict in Employer's favor. *See Mullinax*, 333 S.C. at 92, 508 S.E.2d at 849 ("In ruling on directed verdict motions, the trial court must view the evidence and all inferences which may reasonably be drawn therefrom in the light most favorable to the non-moving party."); *Hooper*, 386 S.C. at 117, 687 S.E.2d at 33 ("[E]quitable tolling is a doctrine that should be used sparingly and only when the interests of justice compel its use.").

## III. EQUITABLE ESTOPPEL

Employees argue the trial court erred in finding Employer was not equitably estopped from asserting a statute of limitations defense. We disagree.

"It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review." *Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733. "A party cannot for the first time raise an issue by way of a Rule 59(e)[, SCRCP,] motion which could have been raised at trial." *Patterson*, 318 S.C. at 185, 456 S.E.2d at 437; *see also Stevens & Wilkinson of S.C., Inc.*, 409 S.C. at 567, 762 S.E.2d at 695 ("[A] party cannot use a Rule 59(e)[, SCRCP,] motion to advance an issue the party could have raised to the [trial] court prior to judgment, but did not.").

Here, Employees did not raise the issue of equitable estoppel until they filed their motion for reconsideration and new trial. *See Patterson*, 318 S.C. at 185, 456 S.E.2d at 437 ("A party cannot for the first time raise an issue by way of a Rule 59(e)[, SCRCP,] motion which could have been raised at trial."); *Stevens & Wilkinson of S.C., Inc.*, 409 S.C. at 567, 762 S.E.2d at 695 ("[A] party cannot use a Rule 59(e)[, SCRCP,] motion to advance an issue the party could have raised to the [trial] court prior to judgment, but did not."). Therefore, we find Employees failed to preserve this issue for appellate review.

**CONCLUSION**

Accordingly, the order of the trial court is

**AFFIRMED.**

**LOCKEMY, C.J., and SHORT and MCDONALD, JJ., concur.**