559 S.E.2d 327

Wannelle HEDGEPATH, Andrew Hedgepath, and
Kristin Hedgepath, Appellants/Respondents,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY,
a corporation, AT & T Nassau Metals Corporation,
Respondents/Appellants,

and

Gaston Copper Recycling Corporation, and
Southwire Company, Respondents.

Karen Mack as Personal Representative of the Estate
of Toby L. Sharpe, Sr., Appellant/Respondent,

v.

American Telephone and Telegraph Company, a corporation, AT
& T Nassau Metals Corporation, Respondents/Appellants,

and

Gaston Copper Recycling Corporation, and
Southwire Company, Respondents.

Maggie Banyard, Brenda Brooks for herself and as guardian for
her incapacitated son Meredyth Brooks, Brenda L. Brooks,
Herbert H. Brooks, Joe L. Brooks, Joseph Brooks on behalf of
his minor child Brandi C. Brooks, Mary H. Brooks; Marvin
Brooks for himself and as guardian for his minor children
Monica, Amanda Tasiras, Marvin II, Sharine Q. and Markita S.
Brooks; Nathaniel Brooks, Jr.; Gertrude Chiles for herself and
as guardian for her minor grandson Stefano L. McKnight;
Azalee Colter, Nathaniel Colter, Thelma D. Colter; Merdis
Davis for herself and as guardian for her invalid husband
Chessie D. Davis; Muriel Davis, Shanetra N. Davis, Patricia
Dease, Eric S. Dibble, Henrietta Dibble, Ivory Dibble; Louella
Dibble on behalf of herself and her minor daughter Shakira
Dibble; Margaret Dibble of behalf of herself and her minor
child Ronrico L. Dibble; Steven L. Dibble, Tronda M. Dibble,
Walter Dibble, Benjamin Edmond, Rosa Mae Glover, Floyd
Hall, Iva M. Hall; Priscilla Hamm on behalf of herself and her
minor child Dominique C. Hamm; Cynthia Harrison, Melvin
Harrison, Jettie James; Augustus James, Jr., for himself and as
guardian for his minor children Augustus James, III and Mar-

risa Ann James; Andrew Jeffcoat, Betty Jeffcoat, Daisey Jeffcoat, Marshall Jeffcoat, Stephanie S. Jeffcoat, Gloria Lou Jenkins, Wanda Jenkins, Brenda K. Johnson, Carrie B. Johnson; Debra Johnson, as guardian for her minor child Joshua Johnson; Frances Johnson, Jettie Mae Johnson, Leroy Johnson, Sam Johnson, Jr., Pandora Jones, Verdia Mae Jones, Ruby Knight, Nancy A. Knott; Barbara Ann Lowman for herself and as guardian for her minor child Marcell Lowman; Eloise Lowman, Nettie Mack, Mamie Lou Manigault, Naomi Manigault, Magnolia Smith Martin, S.L. Martin; Corlette McBride on behalf of her minor child Takila S. McBride; Rogers C. McBride, Ruther M. McBride, Clayton McDaniel, Michael McDaniel, Amos McKnight, Hattie McKnight, Jannie McKnight, Johnnie McKnight, Jr., Rhonda McKnight, Wanda J. McKnight, Willie Mims, Monica Pinckney; Charles Riley on behalf of himself and his minor child Lori Riley; Kia Riley; Patricia Riley on behalf of herself, Swansea Day Care Center, and Swansea Day Care Center, Inc.; Georgia L. Riley; Mildred Riley for herself and as guardian of her minor children Ravenell Riley and Shana Riley; Eunice Robinson; Sonja Robinson for herself and as guardian for her minor child David Robinson; Renee Robinson Scott on behalf of herself and her minor child Jabari Scott; Mary Lee Shiver, John Sipio, Beverly D. Smith; Carol Y. Smith for herself and as guardian for her minor child Tamara Smith; Dedria D. Smith, Hazie L. Smith, Johnnie L. Smith, Lou Bell Smith, Paul Smith, Willie L. Smith, Annie Bell Sutton, Bessie Sutton, Donjinee Sutton, Jasper Sutton; James Sutton for himself and his minor children James Bernard Sutton, and Joshua Jorome Sutton; John E. Sutton, Nancy Sutton, J.C. Wallery, Elizabeth Wallery, Angela Wallery, Sherry Wannamaker; Rosa Washington for herself and as guardian for her child Nicole L. Washington; Willie Washington, Rochelle S. Wideman, Ben Franklin Williams, Carol D. Williams, Gina B. Williams, Helen Williams, Hercules Williams; Melissa Williams for herself and her minor child Latoya Williams; Rebecca Williams, Robert Williams, Robert Williams, III, Roderick Williams, Sallie Mae Williams, Stacia Williams, Timothy Williams, Tom Williams, Tyrone Williams, Beverly Zeigler, Laymond Zeigler, Wanda Anthony, Martha Barnes, Joan Bennett, Claudia Mae Briggman; Linda E. Briggman on behalf of herself and her minor children Felica Briggman and Sharonda Mills; Venna M. Briggman on behalf of herself and as guardian for her minor granddaughter Andrea

Briggman Muller; Alfonza Brooks, Bernetha M. Brooks, Gloria Brooks, Harvey Brooks, Lenell Brooks, Telly Brooks, Betty Brown; Linda Butler on behalf of herself and her minor child Ebony L. Butler; Billie M. Casteal, Mamie Charley, Lorraine E. Culler, Margaret Culler, Audrey M. Davis, Beverly Davis, Elizabeth S. Davis, Frances Davis; Harry W. Davis, Sr. on behalf of himself and his minor daughter Rosheka Latrelle Davis; Rev. John G. Davis, Mary Lee Davis, Mary Loretta Davis, Molly H. Davis, Norvest Davis, Thomas Davis, Willie Mae Davis, Woodrow Davis, Jr., Yolanda R. Davis, Betty Dease, Juanita Dease, Ola Mae Dease, Patricia H. Dease, Thomas Dease, Jr., Tommy Dease, Lewis B. Dibble, John Dublin, Bernice Edmond, Deborah Edmond; Eula Mae Edmond for herself and her minor child Viola Edmond; Nay Edmond, Retia Edmond, Ruby Edmond, Dassie Favor, Sallie J. Favor, Annie Feeder, Marie S. Fields, Annie Lou Fordhooks, Clemson Fordhooks, Frederick Gilliam, Edna Lee Gladden, Wesley Glover, Robin Golson, Ruby D. Gordon, Dolphis Hall, Ina B. Hall, Inez R. Hall, Tom T. Hall, Sr., Cynthia Hallmon; Jessie Hallmon on behalf of herself and her minor children Kevin, Chad, and Yolanda; Monica Hallmon on behalf of herself and her minor children Steven L. Hallmon, Jr., an Stephen M. Hallmon; Steven L. Hallmon, Thomas Ham, Jr., Earlene Hame, Henrietta B. Hart, John Hart, John H. Hart, Jr., Verta Mae Hart, Willie Mae Hart, Diane Henley, Milo Henley, Eyvonne Hipps, Diane Hook, Dorothy Hook, Dasia B. Houser, Karen Jackson, Perry J. Jackson, Verdaniel Jackson, Kenny L. James, Cornell Jeffcoat, David T. Jeffcoat, Rev. Dennis Jeffcoat, Eddie Lee Jeffcoat, Erica D. Jeffcoat, Erick Jeffcoat, George Jeffcoat, Jr., Gregg M. Jeffcoat, Iris F. Jeffcoat, Louise Jeffcoat, Tom W. Jeffcoat, Vickie Jeffcoat–Hayses; Willie Mae Jeffcoat for herself and for her minor child Salika Jeffcoat; Wykeria Jeffcoat; Darletha Johnson for herself and for her minor child Wallace A. Johnson; Elaine Johnson, Faith Johnson, Julian Johnson, Corey Jones, Gloria Jones, Jamie Jones, Estate of Mary A. Jones through Flossie Lee Stevenson; Sarah M. Jones, Shirley M. Jones, John Lowman, Morris Lowman, Eric Lykes; Loretta Lykes on behalf of herself and her minor son Marcus Lykes; Samuel Lykes; Shirley Lykes on behalf of herself and her minor daughter Tapker Lykes; Juanita McDaniel for herself and for her minor child Whitney McDaniel; Leila McDaniel, Maggie McDaniel, Evelyn A. McNeal, Robert L. McNeal, Tamara McNeal, James Evan Mack, Meredith Mack, R. Marie

Mack–Roberts, Luther Manigault; Ronald Manigault, Sr., on behalf of himself and his minor children Ronald Manigault, Jr., and Ronnieshia D. Manigault; David W. Martin, Patricia A. Martin; Nadine Milhouse on behalf of herself and her minor sons Tyries, Kerdrick, and Quan; Carolyn Mims, Emma B. Mitchell, David Myers, Sr., Louise Myers, Booker T. Nelson, Ellerweas Paulling, Ellen L. Porterfield; Willor Dean Richardson, on behalf of herself and her minor children Latasha Richardson and Jamal Richardson; Emma Dell Riley, Jannie W. Riley, John C. Riley, Kevin D. Riley; Mary Riley on behalf of herself and her minor children Sharpi and Akeem; Lillie Mae Roach, Jackie Robinson, Judi Robinson; Julia Robinson on behalf of herself and her minor children Somonia and Terri; Robert Robinson, Shandon M. Robinson, Tamata Robinson, Rosetta Ross, Carlisle L. Salley, Elvin Salley, Elvin Salley, Jr., Ethel G. Salley, Jerry Salley, Linda G. Salley, Morris E. Salley, · Ola Ree Salley, Walter Salley, Wilbert Salley, Albert Sease, Bertha Sease, Diane Sease; Grovette Sease on behalf of herself and her minor children E@verette Sease; James Sease, Jr., Pearline Sease, Tyra Sease, Ruthen Sease@, Eugene Seawright; Margaret Seawright on behalf of herself and her minor children Marcia M. Seawright, Marcus E. Seawright, C. Tiwan Seawright, and Antjuan O. Seawright; Brian O'Neal Simmons, Joyce J. Simmons, Ruby Mack Simmons, Zarita S. Simmons; Alice J. Smith for herself and her minor child Mario M. Smith; Altonia G. Smith, Andy Smith, Cornet Smith, Dana Smith, Jerry Smith, Prince O. Smith, Rosa Smith, Samuel C. Smith, Willie C. Smith, Claire L. Stack, Bessie Stenerson; Flossie Lee Stevenson on behalf of herself and her minor child George Dell Stevenson; G. Dell Stevenson, Eileen Stroman, Arthur J. Sutton, Daisy G. Sutton, Debra Sutton, HenrySutton, Jr., James L. Sutton, Londell Sutton, Swansea Day Care Center, Swansea Day Care Center, Inc., Eula Mae Walker, Michael Wannamaker, Macy S. Washington, Margaret M. Washington, Felicia Willhoit, Berlene Williams, Gloria S. Williams, Mary A. Williams, Pamela P. Williams, Sammie Williams, Marilyn Wilson, Jean B. Wright, Terry V. Wright, Deatrix Zeigler; Deborah Zeigler on behalf of herself and her minor children Allen Zeigler and Sateria Zeigler; Earline Zeigler for herself and as guardian for Margario Harris; Jimmy Zeigler, Leon Zeigler, Lula M. Zeigler, Mildred Zeigler; Sheila Zeigler on behalf of herself and her minor child Brittany Zeigler; Vernetta Zeigler; Wanda Renee' Zeigler on behalf of her minor children Cierra

M. Zeigler and Shareka L. Zeigler; Geneva Adams on behalf of herself and her minor child Michael A. Adams; Jettie Mae Brooks, Mattie Davis, Sarah Davison, Maggie Hamm, Gwendolyn Jackson, Augustus Jones, Terry Jones, Tim Martin, Valerie Martin, Coreletta McBride, Wanda McKnight, Lashonda Smith, John E. Sutton; Nancy Sutton on behalf of her minor child Leslie Sutton; Ronald Taylor, Vernell Taylor; Rosa Washington on behalf of her minor child Destiny Anderson; Loteria Williams, Lateshia Williams, Terry Williams; Gloria Brooks on behalf of her child Jamel Brooks; Debra Brooks, Betty Brooks, Ben Brooks, Carsina Brooks, Laura Fields, Helen Golson; Verdia Jones as guardian for Jermaine Green; Herbert Henley, Lamont McKnight, Willie Mae Porterfield; Sonja Robinson on behalf of her child Lajuana Robinson; Martha Robinson, Cherry Samuel, Abertha Seawright, Dorothy Shivers, Lillie Sutton, Carmell Washington, Carolyn Williams, Jerod Zeigler, Shane Zeigler; Winifred R. Smith Williams for her minor children Adrienne Williams and Benton R. Williams, Appellants,

v.

American Telephone and Telegraph Company, a corporation, AT & T Nassau Metals Corporation, Gaston Copper Recycling Corporation, and Southwire Company, Respondents.

Case Nos. 96–CP–32–0968, 96–CP–32–1016, 96–CP–32–2573. Opinion No. 3418.

Court of Appeals of South Carolina.

Heard Nov. 7, 2001.

Decided Dec. 10, 2001.

Rehearings Denied Feb. 20 and Feb. 21, 2002.

Raymon E. Lark, Jr., of Austin, Lewis & Rogers, of Columbia, for appellants and appellants/respondents.

L. Walter Tollison, III, of Nelson, Mullins, Riley & Scarborough, of Greenville, for American Telephone and Telegraph Company and AT & T Nassau Metals Corporation; Harold W. Jacobs, of Nexsen, Pruet, Jacobs & Pollard; Mark S. Barrow and William R. Calhoun, both of Sweeny, Wingate & Barrow, all of Columbia; and James H. Bratton, Jr., of Smith, Gambrell & Russell, of Atlanta, Georgia, for Gaston Copper Recycling Corporation and Southwire Company, respondents and respondents/appellants.

ANDERSON, J.:

These are environmental pollution cases.[1] The primary issue on appeal in each case is the application of the statute of limitations. Based upon the statute, the trial court granted summary judgment to the defendants in the *Banyard* case. The court denied AT & T Nassau Metals Corporation's ("Nassau") motion for summary judgment in *Hedgepath* and *Sharpe*. Cross appeals were filed. We affirm the decision of the trial court in *Banyard*. However, we decline to rule whether the trial court properly denied summary judgment in the *Hedgepath* and *Sharpe* cases.

---

1. The cases were designated complex litigation and assigned to one circuit court judge.

## THE *BANYARD* APPEAL

### I. Background of the Case

In July 1985, 271 individuals living in the Gaston and Swansea areas of South Carolina instituted several actions in state court claiming personal injury, property damage, and nuisance allegedly caused by pollution from a secondary copper reclamation facility constructed and operated by Nassau. These actions were commonly referred to as the *Baughman* litigation.[2] *See Baughman v. American Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991).

After approximately eight years of litigation, the parties in *Baughman* reached a settlement in August 1993. News of the settlement was reported by the media. Shortly thereafter, a motion to intervene in the *Baughman* litigation was filed by approximately 400 individuals. In the motion, the prospective intervenors asserted they also lived in the area near the reclamation facility and had claims similar to the *Baughman* plaintiffs. The motion stated, in part, as follows:

Intervenor Plaintiffs believed until September 1, 1993 and September 2, 1993, that they were included in this action in a manner that the instant cases protected their interests and injuries and reasonably relied upon that belief.

The prospective intervenors submitted verified affidavits in support of the motion to intervene. Each affidavit was identical and contained the following statements:

A Petition was circulated protesting the activities of the Defendant AT & T at its Nassau plant in the above entitled action and I was advised that all our interests would thereby be protected regardless of whether I signed the Petition.

I believed that my interests were protected in this action until September 1, 1993, when my counsel I retained on that date advised me that my interests were not going to be protected despite my belief to the contrary and my reliance on that belief.

A hearing was held in state court on the motion to intervene and the motion was denied.

---

2. The *Baughman* litigation was not a class action. Counsel for the *Baughman* plaintiffs had an employment contract with each plaintiff.

In September 1993, the *Banyard* plaintiffs [3] instituted an action in federal court against Nassau and the Gaston Copper Recycling Corporation ("Gaston Copper").[4] In October 1996, an order was issued by the federal district court, which granted the defendants' motions to dismiss all federal claims and dismissed the pendent state claims without prejudice.

As a result of the federal court dismissal, the *Banyard* plaintiffs filed an action in state court in November 1996. The complaint alleged causes of action for negligence, trespass, nuisance, and strict liability. Nassau and Gaston Copper filed answers denying the material allegations of the complaint and asserting the statute of limitations as an affirmative defense. A complex case order was entered and a case management order held the initial proceedings would be limited to a determination of whether the plaintiffs' claims were barred by the statute of limitations.

Following a discovery period, Nassau and Gaston Copper filed motions for summary judgment on the statute of limitations defense. The motions were opposed by the *Banyard* plaintiffs.

After a hearing, the trial court judge issued an order granting the summary judgment motions of Nassau and Gaston Copper. The court found the *Banyard* plaintiffs were on notice that a claim against Nassau either did exist or might have existed before September 1987. The court's order states, in part, as follows:

> The record reflects that Plaintiffs were aware of facts and circumstances more than six years before they commenced suit that a claim for property damage might exist.[5] Many of the Plaintiffs were noticing problems about the plant by the late 1970s .... By the mid–1980s, there was widespread

---

**3.** We recognize that some individuals in the federal court litigation may not have been prospective intervenors in the *Baughman* litigation and vice versa. However, for purposes of this opinion, use of the term "the *Banyard* plaintiffs" is sufficient.

**4.** The facility was sold to Gaston Copper on September 20, 1990. Nassau ceased refining operations on August 13, 1990, in preparation for the sale.

**5.** All personal injury claims of the *Banyard* plaintiffs were previously dismissed by court order except the claim of one individual.

concern over the potential harm the Nassau facility's operation was or might be causing to residents in the area. There were community forums, town meetings, government involvement, local political debates, door-to-door communications, media coverage, grassroots organization initiated by local citizens groups, and lawsuits brought by hundreds of residents, such as the *Baughman* litigation.

The record reflects that the *Baughman* plaintiffs, who sued in 1985, were friends, neighbors, and, in many instances, relatives of Plaintiffs in the present action .... Many of the current Plaintiffs worked at the facility or had family members who did. Plaintiffs do not dispute that they were on notice of community concerns and allegations that the plant was the alleged source of personal injury and property damage in the surrounding area.

. . . .

When Plaintiffs sought to intervene in *Baughman,* each Plaintiff filed in support of his or her Motion an affidavit. (footnote omitted). These affidavits affirm that Plaintiffs knew as early as 1985 of the alleged problems concerning the Nassau facility and felt that they had claims arising out of Nassau's operation of the facility for injuries to their person and property. This conclusion is supported by Plaintiffs' admissions that they assumed they were parties in *Baughman,* that their interests (i.e. injuries) were protected in *Baughman,* and that they did nothing to pursue those claims until they read about the *Baughman* settlement in *The State* in August 1993.

. . . .

Plaintiffs' [discovery] admissions confirm they knew or should have known of facts sufficient to trigger the running of the statute [of limitations]. Plaintiffs admitted in their discovery responses that they observed emissions from the plant prior to 1987, that they became aware of community concern, discussions, and reaction to the Nassau facility prior to 1987, that they participated in such meetings and discussions prior to 1987, that they believed their injuries to their persons or property occurred prior to 1987, and that they were aware of the *Baughman* litigation prior to 1987 and felt their interests were protected during that litigation.... Plaintiffs have not disputed these findings.

The trial court also concluded there was no basis to apply the doctrine of equitable estoppel. The court found there were insufficient facts to support a claim that the statute of limitations should be tolled based upon the alleged "active concealment" of the Dames & Moore Report from the public. This was a private environmental report prepared for Gaston Copper in relation to the sale of the plant by Nassau to it. Gaston Copper later provided a copy of this report to the South Carolina Tax Commission in support of a challenge to the Commission's property assessment for the reclamation facility. Portions of this report were publicly released in 1994 after a Freedom of Information Act request led to a declaratory judgment action. *See South Carolina Tax Comm'n v. Gaston Copper Recycling Corp.*, 316 S.C. 163, 447 S.E.2d 843 (1994).

## II. Issues

Did the trial court err in granting summary judgment to Nassau and Gaston Copper because it:

(1) abused its discretion in limiting discovery on the statute of limitations issue;

(2) misapplied the summary judgment burden of proof standard;

(3) misinterpreted the evidence as to each cause of action pled by the plaintiffs; and

(4) failed to apply the equitable estoppel doctrine.

## III. Law/Analysis

### A. Limitation of Discovery

These cases were designated complex litigation and assigned to one circuit court judge. The parties consented to a case management order that limited the initial phase of the proceedings to the statute of limitations issue. Discovery was specifically limited to that issue.

During the discovery phase, the plaintiffs filed a motion to compel against Nassau and Gaston Copper based upon objections filed by the defendants to interrogatories and requests for production. Essentially, the defendants objected to the requested discovery on the ground it exceeded the case man-

agement order and was directed toward the merits of the case, not the statute of limitations issue. The trial court agreed and denied the plaintiffs' motion to compel.

The rulings of a trial judge in matters involving discovery will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Bayle v. South Carolina Dep't of Transp.*, 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001), *cert. denied.* An abuse of discretion occurs when there is no evidence to support the trial judge's factual conclusion or when the ruling is based upon an error of law. *Id.*

The plaintiffs contend the trial court abused its discretion by not allowing (1) depositions of defendants' personnel familiar with plant operations; (2) discovery of FBI information on plant operations; (3) discovery of company production data; and (4) production of confidential portions of the Dames & Moore Report. We agree with the trial court's conclusion that this information may have been relevant to the merits of the case, but it was not relevant to the question of when the plaintiffs knew, or should have known, that they might have had a cause of action against the defendants. Accordingly, we find no abuse of discretion.

### B. Summary Judgment and the Statute of Limitations

The *Banyard* plaintiffs alleged causes of action for negligence, trespass, nuisance, and strict liability. The trial court granted the defense motions for summary judgment as to all causes of action. It found the *Banyard* plaintiffs were on notice that a claim against Nassau either did exist or might have existed before September 1987 (*i.e.*, for those plaintiffs who originally filed their claims in federal court in 1993) or before November 1993 (*i.e.*, for those plaintiffs who originally filed their claims in state court on November 13, 1996). With respect to Gaston Copper, the court concluded insufficient evidence was presented as to new and different injuries to any plaintiff from any alleged wrongdoing after the sale of the plant to Gaston Copper in 1990. The court noted that every plaintiff who was asked confirmed that he or she was claiming the same injuries against all defendants.

### Summary Judgment

An appellate court reviews a grant of summary judgment under the same standard applied by the trial court pursuant to Rule 56, SCRCP. *Baughman v. American Tel. and Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991).

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bayle*, 344 S.C. at 119, 542 S.E.2d at 738 (Ct.App.2001); *Young v. South Carolina Dep't of Corrections*, 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999); *see also Bruce v. Durney*, 341 S.C. 563, 534 S.E.2d 720 (Ct.App. 2000) (holding a motion for summary judgment shall be granted if pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and moving party is entitled to judgment as a matter of law).

Under Rule 56(c), SCRCP, the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Baughman*, 306 S.C. at 115, 410 S.E.2d at 545. With respect to an issue upon which the nonmoving party has the burden of proof, this initial responsibility may be discharged by pointing out to the trial court that there is an absence of evidence to support the nonmoving party's case. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party carries its initial burden, the "opposing party must, under Rule 56(e), 'do more than simply show that there is some metaphysical doubt as to the material facts' but 'must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)) (emphasis in original). The party opposing summary judgment cannot simply rest on mere allegations or denials contained in the pleadings. *Id.*; *George v. Empire Fire & Marine Ins. Co.*, 344 S.C. 582, 545 S.E.2d 500 (2001).

In determining whether any triable issues of fact exist, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Vermeer Carolina's, Inc. v. Wood/Chuck*

*Chipper Corp.*, 336 S.C. 53, 518 S.E.2d 301 (Ct.App.1999). If triable issues exist, those issues must be submitted to the jury. *Young*, 333 S.C. at 718, 511 S.E.2d at 415.

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Brockbank v. Best Capital Corp.*, 341 S.C. 372, 534 S.E.2d 688 (2000). Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is disagreement concerning the conclusion to be drawn from those facts. *Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 534 S.E.2d 672 (2000). However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Pye v. Aycock*, 325 S.C. 426, 480 S.E.2d 455 (Ct.App. 1997).

### *Statute of Limitations*

Under the former § 15–3–530, plaintiffs alleging property damage or personal injury were required to bring suit within six (6) years from when the cause of action arose. By a 1988 act of the General Assembly, this time period was shortened to three years for causes of action arising or accruing on or after April 5, 1988. *See* Annotation, S.C.Code Ann. § 15–3–530 (Supp.2000) (referencing Act No. 432, 1988 Acts 2891). The causes of action articulated by the *Banyard* plaintiffs arose before 1988. Therefore, in our appellate review of the trial judge's summary judgment order, we apply the six-year statute of limitations to the dispute.

The parties agree the "discovery rule" is applicable to the statute of limitations question. According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered. *Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645 (1996); *Bayle v. S.C. Dep't of Transp.*, 344 S.C. 115, 542 S.E.2d 736 (Ct.App. 2001), *cert. denied.* In *Dean*, the Supreme Court stated:

According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered. The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises

from the wrongful conduct. We have interpreted the "exercise of reasonable diligence" to mean that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on **notice** that a claim against another party might exist. Moreover, the fact that the injured party may not comprehend the full extent of the damage is immaterial.

*Id.* at 363, 364, 468 S.E.2d at 647 (emphasis in original) (citations omitted); *Young v. South Carolina Dep't of Corrections,* 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999) (stating the statute of limitations runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct).

The date on which discovery of the cause of action should have been made is an objective, rather than a subjective, question. *Joubert v. South Carolina Dep't of Soc. Servs.,* 341 S.C. 176, 534 S.E.2d 1 (Ct.App.2000); *see also Young,* 333 S.C. at 719, 511 S.E.2d at 416 ("In other words, whether the particular plaintiff actually knew he had a claim is not the test. Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist.").

Reasonable diligence is intrinsically tied to the issue of notice. The *Joubert* Court explicated: "We have interpreted the 'exercise of reasonable diligence' to mean that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist." *Id.* at 191, 534 S.E.2d at 8 (quoting *Dean v. Ruscon Corp.,* 321 S.C. 360, 364, 468 S.E.2d 645, 647 (1996)); *see also Wiggins v. Edwards,* 314 S.C. 126, 442 S.E.2d 169 (1994) (stating the exercise of reasonable diligence means simply that the injured party must act with some promptness where facts and circumstances of injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist; statute of limitations begins to run from this point and not when advice of counsel is

sought or full-blown theory of recovery is developed) (citation omitted).

### Continuing Trespass or Nuisance

The *Banyard* plaintiffs contend the trial court erred in granting summary judgment to Nassau and Gaston Copper because the court did not recognize that their claims involved ongoing misconduct and contamination. They also argue their damages are both abatable and permanent.

In order to attack the statute of limitations defense, the plaintiffs seek to bring their property damage claims within the rubric of a continuing trespass or nuisance. Under South Carolina law, the distinction between trespass and nuisance is that "trespass is any intentional invasion of the plaintiff's interest in the exclusive possession of his property, whereas nuisance is a substantial and unreasonable interference with the plaintiff's use and enjoyment of his property." *Silvester v. Spring Valley Country Club,* 344 S.C. 280, 286, 543 S.E.2d 563, 566 (Ct.App.2001), *cert. denied* (citing *Ravan v. Greenville County,* 315 S.C. 447, 434 S.E.2d 296 (Ct.App. 1993)). A nuisance may be classified as continuing or permanent. *Id.*

A continuing nuisance is defined as a nuisance that is intermittent or periodical. *Id.* It is described as one which occurs so often that it is said to be continuing although it is not necessarily constant or unceasing. *Id.* A nuisance is continuing if abatement is reasonably and practically possible. *Id.* at 287, 543 S.E.2d at 567.

A permanent nuisance may be expected to continue but is presumed to continue permanently with no possibility of abatement. *Id.* at 286, 543 S.E.2d at 566–67. With respect to a permanent nuisance, the injury is fixed and goes to the whole value of the land. *Id.* at 286, 543 S.E.2d at 567.

As to the concept of a nuisance and application of the statute of limitations, where the nuisance is permanent and only one cause of action may be brought for damages, the statute of limitations bars the action if it is not brought within the statutory period after the first actionable injury. *Id.* Where the nuisance is deemed to be continuing and is abata-

ble, the statute of limitations does not run merely from the original intrusion on the property and cannot be a complete bar. *Id.* A new statute of limitations begins to run after each separate invasion of the property. *Id.*

■ Where, however, the nuisance is classified as continuing, the expiration of the limitations period after the first actionable injury does not effect a complete bar as each new injury gives rise to a new cause of action and a landowner may at any time recover for an injury to his land which occurred within the statutory period. *Id.* at 287, 543 S.E.2d at 567, *cert. denied; Cutchin v. South Carolina Dep't of Highways & Pub. Transp.,* 301 S.C. 35, 389 S.E.2d 646 (1990); *McCurley v. South Carolina State Highway Dep't,* 256 S.C. 332, 182 S.E.2d 299 (1971); *Webb v. Greenwood County,* 229 S.C. 267, 92 S.E.2d 688 (1956).

■ The plaintiffs' arguments on common law nuisance obfuscate the real issue: when did the plaintiffs know or, by the exercise of reasonable diligence, should have known they might have had a claim against someone for alleged environmental contamination of their property. Approximately 240 of the 278 remaining *Banyard* plaintiffs submitted affidavits in support of the 1993 motion to intervene in the *Baughman* litigation. By the affidavits, those plaintiffs affirmatively stated they believed their interests were being protected by the *Baughman* litigation. They admitted they knew by 1985 (*i.e.,* the year the *Baughman* litigation was filed) that they might have a claim against someone for alleged environmental contamination. This is an inescapable conclusion. As for the remaining plaintiffs, the trial court correctly concluded the record is replete with uncontested evidence of widespread publicity and awareness of the alleged contamination prior to 1987. *See generally United Klans of America v. McGovern,* 621 F.2d 152 (5th Cir.1980) (ruling that where events receive widespread publicity, plaintiffs may be charged with knowledge of their occurrence).

Additionally, Nassau ceased refining operations at the facility on August 13, 1990, in preparation for the sale to Gaston Copper. Assuming, *arguendo,* that environmental contamination by Nassau continued up to that day, the *Banyard* plaintiffs did not file their federal court action until September

1993, which is more than three years after Nassau ceased its operations. The plaintiffs' reliance upon *Aurora National Bank v. Tri Star Marketing,* 990 F.Supp. 1020 (N.D.Ill.1998) to argue continuing liability by Nassau is misplaced. That case involved an action under the citizen suit provision of the Resource Conservation and Recovery Act. The citizen suit provision allows claims by parties acting as private attorneys-general. *Id.*

The *Banyard* plaintiffs are actually claiming a single indivisible injury to their property for alleged permanent injury by pollution. *See Ravan v. Greenville County,* 315 S.C. 447, 434 S.E.2d 296 (Ct.App.1993) (stating the measure of damages for permanent injury to real property by pollution, whether by nuisance, trespass, negligence, or inverse condemnation is the diminution in the market value of the property). The trial court granted summary judgment to Gaston Copper because insufficient evidence was presented as to new and different injuries to any plaintiff from any alleged wrongdoing after the sale of the plant to Gaston Copper in 1990. The court noted that every plaintiff who was asked confirmed that he or she was claiming the same injuries against all defendants. Since the same injuries were claimed, the trial court correctly applied the discovery rule when analyzing the application of the statute of limitations.

Therefore, based upon: (1) the uncontested evidence of the widespread publicity concerning alleged environmental contamination, (2) the affidavits submitted by the vast majority of the *Banyard* plaintiffs, and (3) the permanency of the claimed property damages, the trial court did not err in granting summary judgment to the defendants under the statute of limitations.

## C. Equitable Estoppel Doctrine

The *Banyard* plaintiffs argue the trial court erred in failing to apply the equitable estoppel doctrine to the statute of limitations. They contend Nassau and Gaston Copper denied allegations of environmental contamination and actively concealed the contents of the Dames & Moore Report until 1994. On these grounds, the plaintiffs assert the defendants should be estopped from relying upon the statute of limitations.

In South Carolina, a defendant may be estopped from claiming the statute of limitations as a defense if some conduct or representation by the defendant has induced the plaintiff to delay in filing suit. *Kleckley v. Northwestern Nat'l Cas. Co.,* 338 S.C. 131, 136, 526 S.E.2d 218, 220 (2000) (citing *Black v. Lexington Sch. Dist. No. 2,* 327 S.C. 55, 488 S.E.2d 327 (1997)); *Harvey v. South Carolina Dep't of Corrections,* 338 S.C. 500, 527 S.E.2d 765 (Ct.App.2000); *Republic Contracting Corp. v. South Carolina Dep't of Highways & Pub. Transp.,* 332 S.C. 197, 503 S.E.2d 761 (Ct.App.1998); *Maher v. Tietex Corp.,* 331 S.C. 371, 500 S.E.2d 204 (Ct.App.1998); *Brown v. Pearson,* 326 S.C. 409, 483 S.E.2d 477 (Ct.App.1997); *Moates v. Bobb,* 322 S.C. 172, 470 S.E.2d 402 (Ct.App.1996); *Kreutner v. David,* 320 S.C. 283, 465 S.E.2d 88 (1995); *Vines v. Self Memorial Hosp.,* 314 S.C. 305, 443 S.E.2d 909 (1994); *Wiggins v. Edwards,* 314 S.C. 126, 442 S.E.2d 169 (1994); *Rink v. Richland Memorial Hosp.,* 310 S.C. 193, 422 S.E.2d 747 (1992); *Dillon County School Dist. No. Two v. Lewis Sheet Metal Works, Inc.,* 286 S.C. 207, 332 S.E.2d 555 (Ct.App.1985), *overruled in part by Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.,* 319 S.C. 556, 462 S.E.2d 858 (1995); *Gadsden v. Southern R.R.,* 262 S.C. 590, 206 S.E.2d 882 (1974).

An inducement for delay may consist of either an express representation that the claim will be settled without litigation or other conduct that suggests a lawsuit is not necessary. *Kleckley,* 338 S.C. at 136–37, 526 S.E.2d at 220; *Vines,* 314 S.C. at 308, 443 S.E.2d at 911; *Wiggins,* 314 S.C. at 130, 442 S.E.2d at 171; *Rink,* 310 S.C. at 198, 422 S.E.2d at 749. However, settlement negotiations which are commenced, but not finalized, will not bar assertion of the statute of limitations. *Gadsden,* 262 S.C. at 592, 206 S.E.2d at 883; *Vines,* 314 S.C. at 308, 443 S.E.2d at 911; *Moates,* 322 S.C. at 175, 470 S.E.2d at 403.

Application of equitable estoppel does not require an intentional misrepresentation. It is sufficient if the plaintiff reasonably relied upon the words or conduct of the defendant in allowing the limitations period to expire. *Dillon County,* 286 S.C. at 218–19, 332 S.E.2d at 561; *Brown,* 326 S.C. at 419, 483 S.E.2d at 482. Whether the defendant's

actions lulled the plaintiff into "a false sense of security" is usually a question of fact. *Dillon County,* 286 S.C. at 219, 332 S.E.2d at 561. However, summary judgment is proper where there is no evidence of conduct on the defendant's part warranting estoppel. *Vines,* 314 S.C. at 309, 443 S.E.2d at 911.

The *Banyard* plaintiffs argue the defendants should be equitably estopped from applying the statute of limitations due to their silence and failure to disclose the extent of environmental contamination, particularly as reflected in the Dames & Moore Report. "Silence, when it is intended, or when it has the effect of misleading a party, may operate as equitable estoppel." *Southern Dev. Land & Golf Co. v. South Carolina Pub. Serv. Auth.,* 311 S.C. 29, 33, 426 S.E.2d 748, 751 (1993) (citation omitted).

The primary point overlooked by the plaintiffs in their estoppel argument is the existence of an underlying duty to speak or disclose. As the Supreme Court noted, "[e]stoppel by silence arises where a person *owing another a duty to speak* refrains from doing so and thereby leads the other to believe in the existence of an erroneous state of facts." *Id.* (emphasis added).

A duty to speak or disclose may be found in three distinct scenarios:

(1) where it arises from a preexisting definite fiduciary relation between the parties;

(2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; and

(3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.

*Jacobson v. Yaschik,* 249 S.C. 577, 155 S.E.2d 601 (1967); *Kiriakides v. Atlas Food Sys. & Serv. Inc.,* 338 S.C. 572, 527

S.E.2d 371 (Ct.App.2000), *affirmed as modified and remanded,* 343 S.C. 587, 541 S.E.2d 257 (2001).

 In this case, there is no factual basis to find a duty to speak or disclose on the part of the defendants. The Dames & Moore Report was a privately commissioned report prepared for Gaston Copper in connection with the sale by Nassau of the reclamation facility. The *Banyard* plaintiffs have not established a fiduciary or confidential relationship between themselves and the defendants that would impose a duty upon the defendants to disclose the contents of this private report to the public. Accordingly, the trial court did not err in failing to apply the equitable estoppel doctrine in the *Banyard* case.

## THE *HEDGEPATH* APPEAL

On April 26, 1996, the *Hedgepath* complaint was filed in state court. The complaint sought recovery for damage to real property based upon causes of action for negligence, trespass, nuisance, strict liability, and fraud. Nassau and Gaston Copper filed answers denying the material allegations of the complaint and asserting the statute of limitations as a defense. Pursuant to the complex case management order, the initial phase of the litigation was limited to the statute of limitations issue.

Following a discovery period, Nassau and Gaston Copper filed motions for summary judgment based upon the statute of limitations. The *Hedgepath* plaintiffs opposed the motion. After a hearing, the trial court denied Nassau's motion for summary judgment based upon the equitable estoppel doctrine. However, the court dismissed Gaston Copper from the litigation because it did not have any contact with the Hedgepath family. Nassau appeals the denial of its summary judgment motion.[6]

We must initially determine if this court has subject matter jurisdiction over Nassau's appeal.

---

**6.** The *Hedgepath* plaintiffs argue in their briefs that the trial court erred in concluding the statute of limitations had run prior to the filing of their suit. Because that argument is connected to the argument on equitable estoppel, the matters will be addressed together.

Nassau asserts this Court should find it has subject matter jurisdiction over this appeal because there is an appealable issue before the court, *i.e.*, the grant of summary judgment in the *Banyard* case.

■■■ We are aware that generally, the denial of a motion for summary judgment is not immediately appealable. *Ballenger v. Bowen*, 313 S.C. 476, 443 S.E.2d 379 (1994). Our appellate courts, however, have recognized an exception to this rule. Specifically, the courts have made a practice of accepting appeals of denials of interlocutory orders not ordinarily immediately appealable when these appeals are companion to issues that are reviewable.

Our examination of the case law regarding this exception begins with the Supreme Court's agreement to consider an appeal of whether a trial court erred in failing to require a party make its complaint more definite in *Briggs v. Richardson*, 273 S.C. 376, 256 S.E.2d 544 (1979). Additionally appealed to the Court for its review was an issue of whether the trial court erred in overruling the appellant's demurrer. Presented with the question of whether to address the denial of the motion for a more definite complaint, the *Briggs* Court pronounced: "While not normally appealable, [the] issue [concerning the motion for a more definite complaint] is before the Court due to the appealability of the first issue [regarding the demurrer]." *Id.* at 379 n. 1, 256 S.E.2d at 546 n.1 (citation omitted).

This Court has taken a concordant view concerning the propriety of reviewing interlocutory orders not ordinarily immediately appealable.

In *Garrett v. Snedigar*, 293 S.C. 176, 359 S.E.2d 283 (Ct. App.1987), partners in a real estate venture brought an action for fraud, breach of contract, and violations of the South Carolina Uniform Securities Act against the organizer, a construction company, and an investment advisor who was retained to market the partnership. The investment advisor was also sued for negligence. The Circuit Court granted the plaintiffs' motion for summary judgment, which concerned the issue of whether their interests in the partnership were securities. The trial court additionally granted the plaintiffs' motion to amend their cause of action for negligence and denied the

investment advisor's summary judgment motion pertaining to this claim. On appeal, the investment advisor argued, *inter alia,* the trial court erred in acting on the plaintiffs' motion to amend without holding a hearing separate from his motion for summary judgment. In response, the Court stated:

> An interlocutory appeal of this issue ... is not normally allowed. *See Davis–McGee Mule Co. v. Marett,* 129 S.C. 36, 37, 123 S.E. 323, 323 (1924) ("No appeal can be made except from a final judgment."). An order denying summary judgment cannot be appealed, even after trial. *Holloman v. McAllister,* 289 S.C. 183, 345 S.E.2d 728 (1986). *However, these issues are properly before us because the issue of whether the Circuit Court erred in granting the motion of the plaintiffs for partial summary judgment is appealable. See Briggs v. Richardson, 273 S.C. 376, 379, 256 S.E.2d 544, 546 (1979) ("While not normally appealable, this issue is before the Court due to the appealability of the first issue.").*

*Id.* at 183 n. 2, 359 S.E.2d at 287 n. 2 (emphasis added).

Numerous reviews of denials of summary judgment motions have occurred since *Garrett. See Anthony v. Padmar, Inc.,* 307 S.C. 503, 415 S.E.2d 828 (Ct.App.1992), *cited in* 4 Am.Jur.2d *Appellate Review* § 170 (1995) (in a case where opposing motions for summary judgment resulted in the trial court granting one and denying the other, the Court of Appeals held the party whose motion was denied may have the denial reviewed on the appeal because the question of whether the trial court erred in granting the other motion was appealable); *Pruitt v. Bowers,* 330 S.C. 483, 488, 499 S.E.2d 250, 253 (Ct.App.1998) ("[Respondent/Appellant] argues the trial court erred in granting [Appellant/Respondent's] motion to amend her complaint. [Appellant/Respondent] responds that the order granting the motion is interlocutory and thus not appealable. We agree that under the precedent of *Briggs v. Richardson* ... and *Garrett v. Snedigar* ... [Respondent/Appellant's] appeal of the amendment order is interlocutory and generally not appealable, but may be considered by the court because it accompanies the appeal of the grant of [Respondent/Appellant's] motion for summary judgment."); *Tanner v. Florence City–County Bldg. Comm'n,* 333 S.C. 549, 553, 511

S.E.2d 369, 371 (Ct.App.1999) (This Court ruled: "[A]n order that is not directly appealable will be considered if there is an appealable issue before this court.").

In *Davis v. Lunceford,* 287 S.C. 242, 335 S.E.2d 798 (1985), the Supreme Court held reviewing the denial of summary judgment was proper to resolve protracted litigation: "Because of the need for final resolution in this [13–year–old medical malpractice] case, we have allowed this direct appeal from the lower court's order denying appellant's motion for summary judgment." *Id.* at 243, 335 S.E.2d at 799 (citation omitted). The issue of whether the denial was proper was the only one on appeal.

The continued viability of *Garrett* is debatable given the recent decisions of *Silverman v. Campbell,* 326 S.C. 208, 486 S.E.2d 1 (1997) and *Ballenger v. Bowen,* 313 S.C. 476, 443 S.E.2d 379 (1994).

In *Ballenger,* the Court stated:

This Court has repeatedly held that the denial of summary judgment is not directly appealable. Further, this Court has held that the denial of summary judgment is not reviewable even in an appeal from final judgment.

*Id.* at 476–77, 443 S.E.2d at 380 (citations omitted).

In addition, the *Ballenger* Court noted that it is "unnecessary [for the trial judge] to make findings of fact and conclusions of law in denying motions for summary judgment." *Id.* at 478 n. 1, 443 S.E.2d at 380 n. 1 (citing Rule 52, SCRCP). Thus, there would be no basis on which an appellate court could make its review.

In *Silverman,* our Supreme Court refused to consider the appellants' claim that the trial court had erred in denying its motion for summary judgment, although it did consider another issue raised by appellants because it was immediately appealable. Thus, the presence of an immediately appealable issue in the order did not make the denial of summary judgment reviewable in that instance. *Id.* at 211, 486 S.E.2d at 2; *cf. Holloman v. McAllister,* 289 S.C. 183, 345 S.E.2d 728 (1986) (declining to address denial of summary judgment after trial while addressing other appealable issues); *Davis v. Tripp,* 338 S.C. 226, 525 S.E.2d 528 (Ct.App.1999) (stating

denial of summary judgment was not reviewable either before or after final judgment).

*Silverman* may represent an attempt to curtail *Garrett*-style exceptions, thereby requiring a closer inquiry into their continued viability.

Because of the dissonance in the precedent in regard to the appealability of the denial of a motion for summary judgment, we decline to address the issue on the merits.

## THE *SHARPE* APPEAL

On May 2, 1996, Toby Sharpe, a former employee of Nassau and Gaston Copper, filed a complaint against Nassau and Gaston Copper seeking damages for personal injury and property damage.[7] Sharpe alleged causes of action for negligence, trespass, nuisance, and strict liability. Nassau and Gaston Copper denied the material allegations of the complaint and asserted the statute of limitations as an affirmative defense. In May 1997, the trial court granted Nassau's motion to dismiss Sharpe's claim for personal injury arising out of workplace exposure. The trial court held Sharpe's claims for personal injuries arising out of residential exposure and claims for property damage could be pursued by him.

Nassau and Gaston Copper subsequently filed motions for summary judgment based upon the statute of limitations. Sharpe opposed the motions. The trial court denied Nassau's motion, concluding that although the statute of limitations had expired, Nassau was equitably estopped from asserting the defense. The trial court granted Gaston Copper's motion for summary judgment concluding Sharpe alleged he developed cancer while working at the plant during the time it was owned by Nassau. In a later order on a motion to reconsider, the trial court specifically clarified that Sharpe's claims against Nassau were limited to property damage only. Nassau appeals the order denying summary judgment.

For the reasons stated in the *Hedgepath* portion of this opinion, we decline to address the merits of Nassau's appeal from the denial of summary judgment.

---

7. Sharpe died during the pendency of this litigation and his personal representative has been substituted as plaintiff by court order.

## *CONCLUSION*

We affirm the decision of the trial court in the *Banyard* case. However, we decline to address whether the trial court properly denied summary judgment in the *Hedgepath* and *Sharpe* cases due to the discord in the case law concerning the appealability of such orders.

**AFFIRMED AS ADDRESSED.**

CONNOR and SHULER, JJ., concur.