**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Gregory J. Feldman, MD, Joseph A. Boscia, III, MD, and Upstate Lung & Critical Care Specialists, PC, Appellants,

v.

Ray E. "Chuck" Thompson, and Charles M. Fogarty, MD, Respondents.

Appellate Case No. 2017-002522

Appeal From Spartanburg County
R. Keith Kelly, Circuit Court Judge

Unpublished Opinion No. 2020-UP-311
Submitted October 1, 2020 – Filed November 18, 2020

**AFFIRMED**

Franklin Milton Mann, Jr., of Franklin Milton Mann Jr. Attorney at Law, of Spartanburg, for Appellants.

Michael B.T. Wilkes and Ellen S. Cheek, both of Wilkes Law Firm, PA, of Spartanburg, for Respondent Charles M. Fogarty.

Matthew Holmes Henrikson, of Henrikson Law Firm, LLC, of Greenville, for Respondent Ray E. Thompson.

_____

**PER CURIAM:**  The circuit court found the statute of limitations barred claims against Ray Thompson and Charles Fogarty for abuse of process and granted summary judgment on that basis.  We affirm for two reasons.  First, there is no dispute that the Appellants—Gregory Feldman, Joseph Boscia, and Upstate Lung & Critical Care Specialists—had the essential information for their abuse of process claim more than three years before they filed this suit.  Second, the fact that one of the Respondents (Thompson) allegedly committed misconduct during discovery in previous litigation does not equitably bar the respondents from using the statute of limitations as a defense.

## FACTS

This is the sequel to a medical malpractice case in which the roles were reversed.  Feldman and Boscia are pulmonologists and partners in Upstate Lung.  Thompson is a lawyer and sued them in 2006 for medical malpractice on behalf of William Casey.  Casey was originally a defendant in this case but was later dismissed by agreement.

Fogarty is a pulmonologist and Feldman's former business partner.  He helped Thompson and Casey in the malpractice suit but did not testify when that case was tried.

The malpractice case alleged Feldman and Boscia breached the standard of care when Casey went to the hospital for chest pain and ended up having two surgeries because Feldman and Boscia believed he inhaled a foreign object.  Nobody disputes the second surgery resulted in a significant complication that put Casey in critical condition and intensive care.  Casey claimed this caused permanent brain damage and left him permanently disabled.

The malpractice case was tried over roughly two weeks in May 2010.  The jury returned a defense verdict.

In October 2010, about five months after the jury's verdict, Appellants filed this case.  The basic theory of this suit is that Fogarty and Feldman are professional rivals and that Fogarty allegedly either conspired or cooperated with Thompson in the malpractice case for the ulterior purpose of ruining Feldman's businesses and career.  The complaint alleges a number of deceptive actions including someone

arranging for Casey to obtain an MRI under a fictitious name and date of birth, providing "bogus" expert witness testimony, lying under oath, and leaking information about the malpractice action to a local newspaper.

The real bone of contention is the theory that Casey suffered brain damage. Feldman—the person spearheading this suit—maintains this sort of thing is anatomically impossible and such a claim is patently frivolous.  Appellants' claims rely heavily on three different versions of a medical note that Fogarty drafted following a July 21, 2005 office visit in which Fogarty opined that Casey suffered an air embolism during Feldman's treatment, leading to Casey's injury and accounting for his alleged cognitive complaints.  Appellants alleged the note was evidence of Fogarty's effort to orchestrate the medical malpractice suit and use it to destroy Feldman's career.  Appellants received copies of the note from Casey's file no later than July 3, 2006.

The circuit court dismissed the case based on the statute of limitations at the Rule 12(b)(6) stage.  However, this court reversed in an unpublished opinion noting the complaint did not indicate when Feldman, Boscia, and Upstate Lung knew or should have known Casey's medical malpractice action supposedly had an improper objective.

After the case was remitted, the parties agreed to a discovery plan requiring everyone to simultaneously produce file documents from Casey's malpractice action.  These documents included multiple emails from 2007 showing Feldman conducted significant research into claims he could potentially bring against Thompson and Fogarty including abuse of process and civil conspiracy.  For example, in an August 11, 2007 email, Feldman wrote "As for abuse of Process that is already fact (He had no right to speak to Press about trial matter [. . .] Violation of Civil Procedure)[.]"  Feldman also sent himself an email on August 17, 2007, containing legal research he performed on the statute of limitations for defamation claims and other causes of action in disputes between doctors.

Other communications revealed Feldman wanted to pursue retaliatory litigation during the malpractice case and his attorneys advised him to refrain from doing so until after the malpractice case concluded.  After asking his attorneys about this multiple times, Feldman and his personal lawyer ultimately confirmed with the malpractice insurer (the JUA) that Feldman and his colleagues would not file a retaliatory suit until after the malpractice case concluded, unless the JUA agreed.

In his deposition, Feldman stated he believed Fogarty improperly fabricated the air embolism theory of injury and wrote it in the July 21 office note in order to enable Casey to file a fraudulent lawsuit. According to Feldman, Fogarty committed "the highest degree of fraud" in writing the note because, in Feldman's opinion, Casey did not have a brain injury, but Fogarty wrote in Casey's chart that he had "undoubtedly" suffered an air embolism. Feldman stated Fogarty "fabricated [the] medical record with legal intent, not medical intent" with the goal of Casey's attorney, Thompson, using that record to file a fraudulent lawsuit.

In December of 2016—almost six years after this suit began—Thompson and Fogarty moved for summary judgment arguing the abuse of process claim was barred by the statute of limitations. They claimed the emails and deposition testimony showed Feldman plainly believed he and his colleagues had such a claim more than three years before this case began. They claimed the court could look to several events as triggering the limitations period, but argued the period had to start no later than August 11, 2007, based on Feldman's email explicitly mentioning an abuse of process claim.

Feldman, Boscia, and Upstate Lung argued the statute of limitations did not begin running until 2008. This is when they say depositions in the medical malpractice case disclosed wrongful actions by Thompson and Fogarty. They also claimed equitable tolling and equitable estoppel prevented the statute of limitations from barring their claim because of Casey's "secret" MRI and other unidentified, but supposedly "outrageous[]," conduct.

The circuit court agreed with Thompson and Fogarty and found the statute of limitations barred the abuse of process claim and neither equitable tolling nor equitable estoppel applied. This appeal followed.

**ISSUES ON APPEAL**

1. Whether the circuit court erred in finding the statute of limitations barred abuse of process claim.

2. Whether the circuit court erred in finding equitable tolling and equitable estoppel did not apply.

**STATUTE OF LIMITATIONS**

Appellants argue the circuit court erred in granting summary judgment because there were triable issues of disputed fact regarding the statute of limitations. As noted above, they point to 2008, when they say the depositions of Dr. Fogarty and of other witnesses supposedly revealed willful acts giving rise to the abuse of process claim.

In generic terms, abuse of process describes using a proper lawsuit for an improper purpose. "The tort of abuse of process is intended to compensate a party for harm resulting from another party's misuse of the legal system." *Pallares v. Seinar*, 407 S.C. 359, 370, 756 S.E.2d 128, 133 (2014). "The essential elements of abuse of process are (1) an ulterior purpose, and (2) a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Id.*

Abuse of process claims have a three-year statute of limitations. *See* S.C. Code Ann. § 15-3-530 (2005); *Whitfield Const. Co. v. Bank of Tokyo Tr. Co.*, 338 S.C. 207, 222, 525 S.E.2d 888, 896 (Ct. App. 1999). The limitations period established by section 15-3-530 begins to run when the plaintiff "knew or by the exercise of reasonable diligence should have known that he had a cause of action." S.C. Code Ann. § 15-3-535 (2005).

The general law on the statute of limitations is familiar. "The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct." *Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996). It requires a party to "act with some promptness" when the circumstances "would put a person of common knowledge and experience on notice that some right of his had been invaded or that some claim against another party might exist." *Johnston v. Bowen*, 313 S.C. 61, 64, 437 S.E.2d 45, 47 (1993). "The statute of limitations begins to run from this point and not when advice of counsel is sought or full-blown theory of recovery is developed." *Id.* "The date of discovery is not when the plaintiff discovers a witness to support or prove his case." *Id.* at 64–65, 437 S.E.2d at 47. "Moreover, the focus is upon the date of discovery of the injury, not the date of discovery of the wrongdoer[.]" *Wiggins v. Edwards*, 314 S.C. 126, 128, 442 S.E.2d 169, 170 (1994).

As noted at the beginning, this case was filed in October 2010. For the suit to be timely, the limitations period must not be triggered before October 2007, three years earlier. *See* § 15-3-530.

We hold the circuit court correctly found the statute of limitations barred this suit because the undisputed evidence shows Feldman and Boscia either knew or should have known they had a claim for abuse of process when they received Casey's medical file in 2006 during discovery in the medical malpractice case. Those materials contained medical records disclosing that Casey had a medical appointment with Fogarty in July 2005 and that Fogarty believed Casey had an "air embolism" and may have suffered brain damage. As already noted, the sum and substance of the abuse of process claim is that Casey's lawsuit was supposedly frivolous and that Fogarty orchestrated the suit by articulating in this note a theory of malpractice that is anatomically impossible. Once Feldman, Boscia, and Upstate Lung possessed that note, they knew Fogarty was the source of the theory that the complications from Casey's surgery may have caused Casey to suffer a cognitive impairment.

The emails from August and September 2007 conclusively show Appellants believed they had a cause of action for abuse of process. *See Dean*, 321 S.C. at 363, 468 S.E.2d at 647 ("The statute runs from the date the injured party either *knows* or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct." (emphasis added)). Specifically, Feldman's August 11, 2007 email stating "As for abuse of Process that is already fact" plainly shows Appellants had actually determined and believed their legal rights had been infringed. Appellants claim this email references the newspaper article about Casey's lawsuit and does not concern the facts that ultimately became the basis for their abuse of process claim. Even so, it is evident that by August 11, 2007, Appellants were fully aware of what they perceived to be the injury and were equally aware it was due to some conduct on the part of Respondents. *See Wiggins*, 314 S.C. at 128, 442 S.E.2d at 170. As already noted, the injury was the supposedly frivolous theory of Casey's disability.

Appellants point to a hodgepodge of things that they deem to be dishonest and "willful" acts that delayed the start of the statute of limitations. For example, the record contains three different versions of the July 2005 office note from Casey's appointment with Fogarty. There are variations in wording at the end of the "comments" section in these notes. They also point to the fact that Thompson arranged for Casey to have an investigative MRI under a false name and did not disclose this during discovery in the malpractice suit, apparently claiming it was

"work product."  The trial court in the malpractice case handled this by allowing the jury to hear about the MRI and its results.

We respectfully disagree with Appellants' argument that these things affect the limitations period.  As for the different versions of the July 2005 note, all of the notes reinforce Fogarty's opinion that Casey may have a neurological impairment.  There is no serious dispute Appellants were aware of that opinion, or should have been aware of it, when they received Fogarty's records in 2006.  *See Johnston*, 313 S.C. at 64, 437 S.E.2d at 47 ("The statute of limitations begins to run from this point and not when advice of counsel is sought or full-blown theory of recovery is developed.").  As for the secret MRI, we do not understand what relevance this has to the claim that Thompson and Fogarty allegedly maintained the Casey suit for an improper purpose.  There is also no evidence Fogarty had anything to do with the MRI.

Based on the foregoing, we hold the statute of limitations on Appellants' abuse of process claim began to run no later than July 3, 2006, the date they received Casey's medical file, and that the claim is therefore barred because Appellants did not file their complaint within the three-year limitations period.

## EQUITABLE ESTOPPEL & TOLLING

Appellants argue the circuit court erred in determining equitable tolling and judicial estoppel did not apply to their claims.  Appellants assert equitable tolling must apply because Respondents supposedly engaged in dishonest, deceptive, and fraudulent conduct throughout the litigation process in this case and in Casey's medical malpractice action.  We disagree.

The only equitable argument Appellants presented to the circuit court was that equitable estoppel prevented the statute of limitations from barring their claim because of Casey's "secret" MRI and other unidentified, but supposedly "outrageous[]," conduct.  The circuit court discussed both tolling and estoppel.

The lead case on tolling explains it is based on ensuring "fundamental practicality and fairness" and should be used "sparingly."  *Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr.*, 386 S.C. 108, 115-17, 687 S.E.2d 29, 32-33 (2009) (quoting *Rodriguez v. Superior Court*, 98 Cal. Rptr. 3d 728, 736 (Cal. Ct. App. 2009)).  "It has been observed that '[e]quitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control.'"  *Id.* at 116, 687 S.E.2d at 32 (quoting *Ocana v. Am. Furniture Co.*, 91

P.3d 58, 66 (N.M. 2004)).  Estoppel applies when the defendant's conduct induces the plaintiff to delay filing suit.  *Hedgepath v. Am. Tel. & Tel. Co.*, 348 S.C. 340, 360, 559 S.E.2d 327, 338 (Ct. App. 2001).

The record does not disclose any actions on the part of Respondents preventing Appellants from filing suit, nor does it reveal any acts of concealment that justify tolling the statute of limitations.   As they did in their argument on the first issue, Appellants point to the different versions of the July 2005 note, to the secret MRI, and to other alleged dishonesty.  None of these undermine the fact that Appellants knew or should have known about Dr. Fogarty's opinion when they received his records.  The alleged misconduct did not prevent Feldman and Boscia from filing this case or induce them to delay filing.

**CONCLUSION**

Based on the foregoing, the circuit court's order granting summary judgment in favor of Respondents is

**AFFIRMED.**[1]

**THOMAS, HILL, and HEWITT, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.